1   **LAW OFFICES OF MARTIN STANLEY**   (SPACE BELOW FOR FILING STAMP ONLY)
    Martin Louis Stanley, Esq. [State Bar No.: 102413]
2   137 Bay Street, No. 2
    Santa Monica, CA 90405
3   Telephone:   (310) 399-2555
    Facsimile:   (310) 399-1190
4
    Edmont T. Barrett [State Bar No.: 74117
5   Park Tower  – Second Floor
    5150 East Pacific Coast Highway
6   Long Beach, California 90804
    Telephone:   (562) 597-3070
7   Facsimile:   (562) 494-1132

8   Attorneys for Plaintiff MARCO ANTONIO MILLA

9

10                  **UNITED STATES DISTRICT COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12

13   MARCO MILLA,                        )   CASE NO.: CV16-134-R (AJWx)
                                         )
14                      Plaintiff,       )   Judge:  Hon. Manuel L. Real
                                         )   Magistrate: Hon. Andrew J. Wistrich
15                                       )
          V.                             )
16                                       )   **SECOND AMENDED COMPLAINT**
                                         )
17   CITY OF LOS ANGELES, a municipal    )   **FOR DAMAGES FOR VIOLATION**
     entity; LOS ANGELES POLICE DEPT., a )
18   municipal entity; DETECTIVE R. ULLEY, )  **OF CIVIL RIGHTS AND DEMAND**
     AND DETECTIVE J. VANDER HORCK,      )
19   and DOES 1 through 10, inclusive    )      **FOR JURY TRIAL**
                                         )
20                      Defendants.      )
     _____)

21        Plaintiff, for causes of action against the defendants, and each of them, alleges as

22   follows:

23                          **JURISDICTION**

24        1.       Plaintiff MARCO MILLA brings this action against the CITY OF LOS

25   ANGELES, a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal

26   entity; DETECTIVE R. ULLEY, and DETECTIVE J. Vander Horck , and DOES 1 through

27   10, inclusive, and alleges as follows:

28   ///

---

## PARTIES

2.      At all material times herein, Plaintiff was a citizen of the United States, and a resident of Los Angeles County, California.

3.      At all material times herein, Defendant CITY OF LOS ANGELES was and is a municipal entity organized and existing pursuant to and under its laws and the laws of the State of California.

4.      At all material times herein, Defendant LOS ANGELES POLICE DEPARTMENT  was and is a municipal entity organized and existing under its laws and the laws of the State of California.

5.      At all material times herein, Defendants ULLEY and VANDER HORCK were police officers and detectives working for the Los Angeles Police Department, employed in the City of Los Angeles.

6.      All of the acts and omissions complained of herein occurred within Los Angeles County California.

7.      The true names and capacities of defendant DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said DOE defendants by such fictitious names. Plaintiff seek leave of court to amend this Complaint to set forth their true names and/or capacities when the same are ascertained.

8.      Plaintiff is informed and believes, and thereon alleges that, at all material times herein, the Defendants sued as DOES, and each of them, were in some manner responsible for the events herein alleged, thereby causing injuries to the Plaintiff.

9.      Said fictitiously DOE defendants are so identified pursuant to California Code of Civil Procedure section 474, California Government Code section 950.4, and the decisions in, *e.g.*, *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989) [citing *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1463 (9th Cir. 1988)], and *Motley v. Parks*, 198 F.R.D. 532, 534-535 (C.D.Cal. 2000); *see also Olden v. Hatchell*, 154 Cal. App.3d 1032, 1037-1938, 201 Cal.Rptr. 715, 719-720 (1984) (Cal. Code Civ. Proc., § 474 [applicable to government employee defendants.]) Said Defendants are sued in, and

**SECOND AMENDED COMPLAINT**

1 only in, their individual capacities pursuant to, *inter alia*, *Hafer v. Melo*, 502 U.S. 21, 31,

2 112 S. Ct. 358, 365, 116 L.Ed.2d. 301 (1991) ["We hold that state officials, sued in their

3 individual capacities, are 'persons' within the meaning of § 1983. The Eleventh

4 Amendment does not bar such suits, nor are officers absolutely immune from individual

5 liability under §1983 solely by virtue of the 'official' nature of their acts."].

6      10.    At all material times herein, each of the defendants was the agent, servant,

7 employee, and joint venturer of each of the remaining defendants, and was at all times

8 acting within the course and scope of said relationship, and each defendant has ratified the

9 acts and omissions herein.

10      11.    In performing and engaging in the acts alleged herein, each individual

11 defendant was acting under color of law; to wit, under the statutes of the State of California

12 and the ordinances, regulations, customs, practices of the State of California and Los

13 Angeles Police Department.

14      12.    The fictitious DOE defendants herein, together with the named defendants,

15 and each of them, are responsible in some manner for the unlawful conduct hereinafter

16 alleged, which actually caused, proximately caused, or was a substantial factor in causing,

17 the injuries and loss to the plaintiff as hereinafter set forth. Because of the unlawful

18 conduct of each of the defendants, the plaintiff is entitled to money damages as

19 compensation.

20                        **PRELIMINARY ALLEGATIONS**

21      13.    At all material times herein, defendants ULLEY and VANDER HORCK, and

22 Does 1 through 50, and each of them, were duly appointed, and acting as police officers,

23 employees, and agents of defendant CITY OF LOS ANGELES and the LOS ANGELES

24 POLICE DEPARTMENT, and were employed by such Defendants, and acting within the

25 course and scope of their employment and agency, and in doing the things hereinafter alleged,

26 were acting under color of state law.

27      14.    Each of the defendants herein caused, and is responsible for, the unlawful

28 conduct herein alleged, and resulting injuries, by acting jointly and in concert with others who

**SECOND AMENDED COMPLAINT**

1   did so by authorizing, acquiescing, condoning, acting, omitting, or failing to take action, to

2   prevent the unlawful conduct, and by promulgating or failing to promulgate policies and

3   procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with

4   deliberate and gross indifference to Plaintiff's constitutional rights; to initiate and maintain

5   adequate supervision, security, training, compliance with responsibilities and duties, and

6   staffing; by failing to maintain proper and adequate procedures and protocols; and by ratifying

7   and condoning the unlawful conduct performed by agents and officers, deputies, medical staff,

8   and employees under their direction and control.

9          15.    In doing the things herein after alleged, each of the defendants violated

10  Plaintiff's constitutional rights in violation of, among other things, the Fourteenth Amendment

11  to the United States Constitution, and further deprived Plaintiff of his liberty without due

12  process of law in violation of, among other things, the Fourteenth Amendments to the United

13  States Constitution, all in violation of 42 U.S.C. Section 1983.

14         16.    This conduct by the defendants, and each of them, was done with gross

15  indifference to Plaintiff's constitutional rights and was unreasonable.

16                              **FACTUAL ALLEGATIONS**

17         17.    On September 29, 2001, a gang shooting occurred in the Harbor Gateway area

18  of Los Angeles, which falls under the jurisdiction of the defendant LOS ANGELES POLICE

19  DEPARTMENT, resulting in the murder of one person and attempted murders of six other

20  persons.

21         18.    The shooting was committed by a member of the 204th Street Gang, an Hispanic

22  gang, that was hostile to African American gang members.

23         19.    Defendants, ULLEY and VANDER HORCK, under color of state law,

24  arbitrarily and wrongfully, and with gross indifference to Plaintiff's constitutional rights,

25  arrested and charged Plaintiff on October 24, 2001 with the above-mentioned murder and

26  attempted murders, knowing full-well that, if convicted, Plaintiff faced either the death penalty

27  or a mandatory sentence of life imprisonment without possibility of parole. In so doing, the

28  defendants, and each of them, deprived the Plaintiff of life and liberty without due process in

violation of, among other things, the due process clause of the Fourteenth Amendment to the United States Constitution.

20.     In so doing, defendants ULLEY and VANDER HORCK, instead of performing the police work necessary to properly solve the crime, conspired and agreed among themselves to shortcut the process.  Specifically, defendants ULLEY and VANDER HORCK, unjustly singled out the Plaintiff as a suspect because Plaintiff had prior contacts with other police officers who wrote "Field Identification" cards documenting those contacts, and defendants ULLEY and VANDER HORCK  affirmatively endeavored to stretch and manipulate the facts to fit the false hypothesis that the Plaintiff was guilty of the above-identified crimes.

21.     Defendants ULLEY and VANDER HORCK also deliberately and affirmatively failed to investigate and develop information which would have helped to establish the guilt of another person. Consistent with that endeavor, said defendants unlawfully suppressed information which would have implicated others and thereby exonerated Plaintiff.

22.     In so doing, defendants ULLEY and VANDER HORCK engaged in a course of conduct that a reasonable police officer could not have believed to be lawful; in that, they manufactured a case against Plaintiff by the use of fabricated evidence, which  included, but was not limited to, unlawfully manipulating the witnesses to falsely identify Plaintiff by means of improper and suggestive identification procedures.

23.     This unlawful witness manipulation described in the preceding paragraph included obtaining a false and incriminating statement and cross-racial identification from victim Jamar Jenkins, which the defendants knew to be unreliable, and which was obtained through unconstitutional tactics, including improper psychological intimidation and pressure, such that the statement and  identification was neither true nor the product of the witnesses' free will.

24.     This conduct by defendants ULLEY and VANDER HORCK was done purposely in order to charge Plaintiff, a male Hispanic, with the crimes herein specified, even though both defendants ULLEY and VANDER HORCK knew that:

a.     Plaintiff did not fit the physical description provided to the police by the

-5-

**SECOND AMENDED COMPLAINT**

1          witnesses and other victims in this case;

2          b.     Cross-racial identifications are notoriously unreliable;

3          c.     After his arrest on October 24, 2001, which was unexpected by Plaintiff and

4                 without warning to him, Plaintiff provided an alibi to defendants ULLEY and

5                 VANDER HORCK;

6          d.     This alibi given by Plaintiff was verified by defendants ULLEY and VANDER

7                 HORCK with another witness, one Alex Velarde, which verification was done

8                 under circumstances in which Plaintiff and this witness did not have the

9                 opportunity to concoct a story;

10         e.     Defendants ULLEY and VANDER HORCK, had been provided with the name

11                of the actual person that committed these crimes, one Julio Munoz, aka Downer,

12                as a possible suspect, a person who fit the physical description provided to the

13                police by the witnesses and other victims in this case; and,

14         f.     There was no physical evidence whatsoever connecting Plaintiff to the charged

15                crimes, nor was there any evidence placing Plaintiff at the scene of the crimes

16                on the day they were committed.

17         25.    On October 25, 2001, defendants ULLEY and VANDER HORCK presented this

18   case to the Los Angeles County District Attorney's Office in such an incomplete and factually

19   distorted manner that the District Attorney's Office filed charges against Plaintiff.

20         26.    By Information filed March 14, 2002 in the Los Angeles County Superior Court,

21   the petitioner was charged with the following counts:

22         One:        Murder of Robert Hightower in violation of Penal Code section 187,

23                     subdivision (a);

24         Two:        Attempted murder of Steven Flowers in violation of Penal Code section

25                     664 and section 187, subdivision (a);

26         Three:      Attempted murder of Ramar Jenkins in violation of Penal Code section

27                     664 and section 187, subdivision (a);

28         Four:       Attempted murder of Damadre White in violation of Penal Code section

-6-
**SECOND AMENDED COMPLAINT**

| 1 | | 664 and section 187, subdivision (a); |
| 2 | Five: | Attempted murder of Erica Hightower in violation of Penal Code section |
| 3 | | 664 and section 187, subdivision (a); and, |
| 4 | Six: | Attempted murder of Senya Williams Flowers in violation of Penal Code |
| 5 | | sections 664 and 187, subdivision (a). |

27.   The charging *Information* also included the following special allegations:

a.   Count One:  That the murder was committed for the special circumstance of race within the meaning of Penal Code section 190.2, subdivision (a)(16), and that Milla personally discharged a firearm causing death within the meaning of Penal Code section 12022.53, subdivisions (b) through (d);

b.   Counts Two and Three: That Milla personally discharged a firearm causing great bodily injury within the meaning of Penal Code section 12022.53, subdivisions (b) through (d);

c.   Counts Four through Six: That Milla personally discharged a firearm within the meaning of Penal Code section 12022.53, subdivisions (b) and (c); and,

d.   Counts One through Six:   That the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang within the meaning of Penal Code section 186.22, subdivision (b)(1).

28.   On December 23, 2002, the jury found Plaintiff guilty on all counts, and found all special allegations and special circumstances to be true.

29.   After the Plaintiff was convicted, he hired new counsel who conducted an investigation for the purpose of filing a motion for a new trial.

30.   On June 18, 2003, Plaintiff filed a motion for new trial in the trial court based on grounds of, among other things,  newly discovered evidence.

31.   During the course of that investigation, Plaintiff's counsel and investigator located a witness, a minor named Maria F., who saw the shooting for which the Plaintiff had been convicted; however, she was afraid to come forward because she feared gang retaliation.

32.   Maria F. finally agreed to come forward and testify, and Plaintiff then filed a

**SECOND AMENDED COMPLAINT**

1    motion for a new trial and, prior to the hearing, provided the defendants with Maria F.'s

2    statement and address as required by local court rules. These defendants, prior to the hearing

3    on the motion for a new trial, contacted the minor Maria F. and interrogated her in an

4    intimidating and harassing manner in an attempted to frighten her into not testifying at the

5    hearing on the motion for a new trial, and Maria F. did feel frightened as a result.

6        33.      During that interrogation, the witness Maria F. told the defendants that she had

7    seen the shooting; that it was done by a 204th Street gang member named Downer; that she

8    knew who the Plaintiff was, but did not have a close relationship with him; that she did not see

9    the Plaintiff in the area of the shooting the entire day even though 204th Street gang members

10    had gathered there to watch the Bernard Hopkins and Felix Trinidad boxing match that

11    evening; that after the shooting, Downer had tried to date Maria F., which she refused, and

12    when Downer asked her why she wouldn't go out with him, Maria F. answered that she didn't

13    like violence, and that Downer had killed someone and let the Plaintiff do life for him; in

14    response, Downer made statements and acted in such a manner as to constitute a tacit

15    admission.

16        34.      Defendants ULLEY and VANDER HORCK wrongfully and maliciously ignored

17    this information and actively attempted to suppress the Plaintiff's investigation by approaching

18    Plaintiff's investigator, a retired LAPD homicide and gang detective, and threatening to bring

19    charges against him and cause him to loose his pension unless he ceased his investigation into

20    these matters. The defendants also filed formal charges against an LAPD officer who

21    personally knew Plaintiff's investigator and had provided the investigator with a copy of a

22    photograph of "Downer," the shooter identified by Maria F. in the possession of the LAPD.

23        35.      This conduct by defendants ULLEY and VANDER HORCK was part of an on-

24    going effort to suppress the truth and blame Plaintiff for crimes that he did not commit, and

25    it constitutes a consciousness of guilt by both said defendants.

26        36.      On August 1, 2003, the trial court heard and denied Milla's motion for a new

27    trial, primarily because the court determined that the witness, Maria F., could have been

28    located by the defense with reasonable diligence.

**SECOND AMENDED COMPLAINT**

37.    On August 6, 2003, the trial court entered judgment and imposed the following sentence:

    a.    As to Count One: to a term of life without the possibility of parole;

    b.    As to Counts Two and Three:  a consecutive term of life plus 25 years to life for each of Counts Two and Three;

    c.    As to Counts Four through Six: a concurrent term of life plus 20 years for each of Counts Four through Six; and,

    d.    The court also imposed a minimum parole eligibility term of 15 years for each of Counts One through Six based on the gang enhancement.

38.    Thereafter, Plaintiff's counsel was provided with a letter dated November 10, 2010 from the Head Deputy District Attorney of the Bureau of Fraud and Corruption Prosecutions, Organized Crime Division, Los Angeles County District Attorney's Office, a copy of a letter/report from the United States Department of Homeland Security. That letter/report addressed to Mr. Max Shiner, Special Assistant United States Attorney in Los Angeles, concerned an unidentified confidential source of information (SOI) who had witnessed the shooting for which Plaintiff was convicted.

39.    The letter stated that the U.S. Department of Homeland Security was conducting an investigation into the criminal activities of several Harbor area street gangs. During the course of that investigation, an unnamed confidential source of information (SOI) was developed, and "[t]his SOI has  provided information to the Los Angeles County Sheriff's Department (LASD)in the past which was deemed to be reliable." The following are pertinent excerpts from that letter/report addressed to the U.S. Attorney's Office:

    a.    The SOI stated that he/she had information regarding the race related homicide of Robert Hightower which occurred on September 29, 2001 in the Harbor Gateway area of Los Angeles.

    b.    The SOI stated that homicide was committed by 204th Street gang member Julio MUNOZ a.k.a. DOWNER; however, Plaintiff was arrested and convicted of the

1    murder.

2    c.    The SOI stated that on September 29, 2001, 204th Street gang members Sal

3          Correa a.k.a. VAMPY, Mike Colelasure a.k.a. PSYCHO MIKE, and DOWNER,

4          along with La Rana gang member Anthony Pollack a.k.a. TRAVESO and

5          several unknown La Rana gang members, had gathered to watch a televised

6          boxing match.

7    d.    At the conclusion of the fight, all of the gang members went outside in front of

8          PSYCHO MIKE'S residence.

9    e.    The SOI stated that a black Chevy Suburban occupied by four black males

10         circled the block several times.

11   f.    The 204th Street gang members were on high alert due to a recent drive-by

12         shooting in the area they claimed as territory.

13   g.    The SOI stated that he/she overheard DOWNER tell TRAVESO to give him a

14         gun and that if the Suburban circled the block again DOWNER planned to shoot

15         at the occupants.

16   h.    The SOI observed TRAVESO give DOWNER a semi-automatic hand gun.

17   I.    The SOI stated that he/she was standing in the driveway of PSYCHO MIKE's

18         residence and heard several gun shots.

19   j.    The SOI observed DOWNER standing in the middle of the street with his face

20         covered by a dark colored t-shit.

21   k.    The SOI further stated that he/she recognized DOWNER by the clothing he was

22         wearing.

23   l.    The SOI stated that he/she saw a black male lying on the street and heard a

24         female voice yelling.

25   m.    The SOI also stated that, to his knowledge, Petitioner (Marco Antonio Milla)

26         was not present in the area of 204th Street and Denker Avenue at the time

27         Robert Hightower was shot.

28

**SECOND AMENDED COMPLAINT**

40.     Then, on January 19, 2012, Milla filed a *Petition for a Writ of Habeas Corpus* with the trial court.  The petition was based on newly discovered evidence consisting of the above-discussed SOI eyewitness to the shootings for which Milla was convicted.

41.     On December 19, 2014, the court granted Plaintiff an evidentiary hearing.

42.     The evidentiary hearing began on June 23, 2014. In addition to other evidence produced at the hearing, the SOI eyewitness was also called as a witness by the petitioner.

43.     On June 30, 2014, the Superior Court granted the petition asking for a writ of habeas corpus, vacated the prior conviction and judgment, and ordered a new trial.

44.     When granting the writ of habeas corpus, the court explained, among other things, that the testimony of the SOI constituted newly discovered evidence; that the testimony of the SOI was credible; that Downer, who took the stand and refused to testify pursuant to the Fifth Amendment, more closely matched the description of the shooter than the Plaintiff, in that Downer is slender and slight of stature and has a scar on his left forehead and Plaintiff has a much larger frame and does not have the aforementioned scar.

45.     In addition, the court ruled that the newly discovered evidence from the SOI created fundamental doubt in the accuracy of the proceedings and "point[ed] unerringly to innocence or reduced culpability," citing the controlling case, *In re Lawley* (2008) 42 Cal.4th 1231.

46.     Thereafter, on August 11, 2014, Milla was released from custody.

47.     Then, on January 9, 2015, the Los Angeles County District Attorney's Office announced that it would not proceed with a second trial, and the case against the Plaintiff was dismissed with prejudice.

48.     On July 30, 2015, Petitioner filed with the court a *Petition for a Finding of Factual Innocense and Related Relief.*

49.     The hearing on that petition was continued twice, and then the petition was contested, heard and argued, on January 11, 2016, and then granted by the court.

50.     On January 13, 2016, the court signed and filed an *Order Finding Factual Innocence* pursuant to California Penal Code section 1485.55, stating that it finds that the new

**SECOND AMENDED COMPLAINT**

1  evidence on the *Petition for Writ of Habeas Corpus* points unerringly to innocence, and

2  therefore, the court finds and holds that the Plaintiff, MARCO ANTONIO MILLA, is factually

3  innocent of the charges for which he was convicted and sentenced.

### FIRST CLAIM FOR RELIEF

5  Violation of Civil Rights Pursuant to Title 42 U.S.C. 3 1983

6  Against Defendants Ulley and Vander Horck

7  CIVIL RIGHTS VIOLATIONS FOR

8  UNLAWFUL IMPRISONMENT AND MALICIOUS PROSECUTION

9  51.  Plaintiff repeats and incorporates herein by reference each and every

10  allegation contained in ¶¶ 1 through 50, inclusive, and repleads the same as if set forth

11  herein in full, with the same force and effect.

12  52.  As a result of the above actions, Plaintiff was falsely, wrongfully, and

13  unreasonably arrested and accused and charged with murder and attempted murder without

14  any reasonable or probable cause or belied that Plaintiff was guilty of such crimes.

15  Further, as a result of the above actions, Plaintiff was maliciously and unlawfully

16  prosecuted without proper cause, convicted and erroneously and wrongfully imprisoned.

17  53.  As a direct and proximate cause of the conduct of the Defendants as herein-

18  above alleged, Plaintiff was wrongfully convicted of such crimes and sentenced to life

19  imprisonment without possibility of parole.

20  54.  As a further direct and proximate result of the violation of his constitutional

21  rights by Defendants, Plaintiff was incarcerated from October 24, 2001 until he was finally

22  released on August 11, 2015, a total of 4,675 days of erroneous  and wrongful

23  imprisonment.

24  55.  In violating Plaintiff's constitutional rights to, among other things, due

25  process pursuant to the Fourteenth Amendment to the United States Constitution,

26  Defendants, and each of them, acted under color of state law.

27  56.  As a further direct and proximate result of the violation of his constitutional

28  rights by Defendants, Plaintiff suffered general and special damages as alleged in this

SECOND AMENDED COMPLAINT

1 | Complaint and is entitled to relief under 42 U.S.C. § 1983.

2 |      57.    The conduct of Defendants ULLEY and VANDER HORCK was willful,

3 | malicious, oppressive and/orin reckless disregard of Plaintiff's constitution rights, and was

4 | of such a nature that punitive damages should be imposed in an amount co commensurate

5 | with the wrongful acts alleged herein.

6 | **SECOND CLAIM FOR RELIEF**

7 | Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983

8 | Against Defendants City of Los Angeles and Los Angeles Police Department for

9 | MUNICIPAL LIABILITY FOR CIVIL RIGHTS VIOLATIONS FOR

10 | UNLAWFUL IMPRISONMENT AND MALICIOUS PROSECUTION

11 |      58.    Plaintiff repeats and incorporates herein by reference each and every

12 | allegation contained in ¶¶ 1 through 50, and 52 through 56, inclusive, and repleads the

13 | same as if set forth herein in full, with the same force and effect.

14 |      59.    Defendants CITY OF LOS ANGELES and LOS ANGELES POLICE

15 | DEPARTMENT implicitly or explicitly adopted and implemented careless and reckless

16 | policies, customs, or practices, that included among other things, allowing Los Angeles

17 | Police Department employees to arrest and cause to be prosecuted persons without

18 | probable cause, to intimidate and coach witnesses to give false and/or misleading testimony

19 | against them, to conceal this fabrication of evidence, to conceal other material, exculpatory

20 | evidence in order to convict and imprison innocent persons of serious crimes.

21 |      60.    Specifically, CITY OF LOS ANGELES and LOS ANGELES POLICE

22 | DEPARTMENT maintained customs and practices that posed a substantial risk of serious

23 | harm and were grossly indifferent to the constitutional rights of persons in Plaintiff's

24 | situation, and each defendant knew or, by law, should have known, that the following

25 | custom or practice posed this risk of harm:

26 |     a.    Inadequate supervision and training of officers, deputies, and employees,

27 |            especially with regard to citizen contact and reasonable use of force,

28 |            identification procedures, full and complete and fair investigative procedures

1    and fair and full disclosure of evidence procedures;

2    b.    Failure to prevent unreasonable use of force, arrest and incarceration;

3    c.    Failure to supervise, investigate, and take corrective actions in incidents of

4    failure to use reasonable force;

5    d.    Condoning lax supervision of officer misconduct, unconstitutional conduct,

6    and or dereliction of duty;

7    e.    Condoning lax supervision by supervisors who fail to report or investigate

8    officers and other supervisors wrongful, unconstitutional, or dereliction of

9    duty and failure to use reasonable force and appropriate fair, full and

10    complete investigative techniques;

11    f.    Condoning lax supervision by supervisors who fail to take preventative

12    measures to protect the safety of the citizens of Los Angeles;

13    g.    Ratifying wrongful conduct by detectives, deputies, officers, and/or

14    supervisors that results in unreasonable use of force and repetition of the

15    wrongful conduct; and,

16    h.    Failure to implement competent and/or appropriate policies and procedures

17    regarding citizen contact and investigation techniques and (10) failure to

18    comply with policies and procedures regarding citizen contact and

19    investigative techniques.

20    61.    Defendants CITY OF LOS ANGELES and LOS ANGELES POLICE

21    DEPARTMENT caused Plaintiff to be falsely imprisoned and maliciously prosecuted

22    without proper cause, and caused Plaintiff to be arrested and convicted of a crime he did

23    not commit, resulting in his serving a long and torturous prison sentence for no reason.

24    62.    In addition, the treatment afforded to Plaintiff demonstrates that it is the

25    policy and custom of the CITY OF LOS ANGELES and LOS ANGELES POLICE

26    DEPARTMENT to arrest and prosecute persons without probable cause; to intimidate and

27    coach witnesses to give false testimony against them; to conceal this fabrication of

28    evidence; to take shortcuts in investigations; and to conceal other material, exculpatory

**SECOND AMENDED COMPLAINT**

1    evidence in order to convict and imprison innocent persons of serious crimes. These

2    Defendants' policy or custom of discriminating against Hispanics was a motivating force in

3    this unconstitutional misconduct. These defendants failed to properly train or supervise its

4    personnel to avoid such unconstitutional conduct.

5         63.    In committing the acts complained of herein, Defendants acted under color of

6    state law to deprive Plaintiff as alleged herein of certain constitutionally protected rights

7    including, but not limited to, the right to not be deprived of liberty without due process of

8    law, and the right to be free from excessive use of force by persons acting under color of

9    state law, and further deprived Plaintiff of his liberty without due process of law in

10   violation of the Fourteenth Amendments to the United States Constitution, all in violation

11   of 42 U.S.C. Section 1983, among other things. As a result, Plaintiff was sentenced to life

12   imprisonment without possibility of parole and suffered extreme, cruel and unusual

13   punishment.

14        64.    In addition to the foregoing, Plaintiff was also the victim of, and his injuries

15   and violation of his Constitutional rights were proximately caused by, a policy and practice

16   on the part of the Defendants CITY OF LOS ANGELES and LOS ANGELES POLICE

17   DEPARTMENT to secure false convictions through profoundly flawed investigations.

18        65.    Specifically, throughout the 1990's and continuing thereafter, Los Angeles

19   police officers, including the defendant police officers herein, engaged in a systematic

20   pattern, custom and practice of coercion, fabrication of evidence, withholding of *Brady*

21   evidence and information, and other illegal tactics, the sum total of which completely

22   corrupted the investigative process.

23        66.    This custom and practice includes, but is not limited to:

24        a.     Showing witnesses photograph array lineups (also called 6-packs) in an

25               overly suggestive manner in order to obtain identifications regardless of their

26               reliability; and,

27        b.     Not showing photograph array lineups in a "double blind manner," and

28               instead showing them until the witness makes an identification the

-15-

**SECOND AMENDED COMPLAINT**

1        defendants wanted, even though each of the defendants, including command

2        personnel, know that not conducting a photo array lineup in a "double blind"

3        manner is overly suggestive and leads to false identifications.

4        67.     This institutional desire to "solve" crimes more expediently regardless of

5   actual guilt or innocence, in order to enhance police officers' personal standing in the

6   Department, was known to the command personnel, who themselves participated in the

7   practice.

8        68.     The above-described widespread custom and practices, so well-settled as to

9   constitute *de facto* policy in the Los Angeles Department during the time period at issues,

10  was able to exist and thrive because municipal policymakers with authority over the same

11  exhibited deliberate indifference to the problem.

12       69.     Los Angeles police officers who manufactured criminal cases against

13  individuals such as Plaintiff had every reason to know that they not only enjoyed *de facto*

14  immunity from criminal prosecution and/or departmental discipline, but that they also

15  stood to be rewarded for closing cases no matter what the costs. In this way, this system

16  proximately caused abuses, such as the misconduct at issue in this case.

17       70.     In addition, the withholding of *Brady* information and evidence from

18  Plaintiff's defense in this case was all undertaken pursuant to, and proximately caused by, a

19  policy and practice on the part of the Los Angeles Department.

20       71.     Specifically, at all times relevant hereto, members of the Los Angeles Police

21  Department, including the Defendants in this action, systematically suppressed *Brady*

22  information and evidence by intentionally secreting discoverable information in so-called

23  "gang books," a state-wide computer program known as "Cal Gags," and other

24  departmental computer data files concerning gangs and their members.  As a matter of

25  widespread custom and practice, these clandestine files were and are routinely withheld

26  from the criminal defendants.

27       72.     Consistent with the policy and practice described in the preceding

28  paragraphs, Defendants in this case concealed *Brady* information and evidence within the

1  above-identified clandestine files which were never disclosed to Plaintiff's criminal defense

2  team.  This withholding of *Brady* information and evidence was undertaken pursuant to the

3  City's policy and practice in the manner described above.

4         73.    The policy and practice described in the foregoing paragraph was

5  consciously approved at the highest policy-making level for decisions involving the police

6  department, and was a proximate cause of the injuries suffered here by the Plaintiff.

7         74.    As a direct and proximate cause of the conduct of each of the defendants

8  herein, as above-described, Plaintiff was maliciously and unlawfully  prosecuted without

9  proper cause.  Plaintiff did not receive a fair trial, he was convicted, and erroneously and

10  wrongfully imprisoned.

11         75.    This conduct by the Defendants, and each of them, violated Plaintiff's

12  constitutional rights to, among other things, due process pursuant to the Fourteenth

13  Amendment to the United States Constitution, and in so doing, the Defendants acted under

14  color of state law.

15         76.    As a further direct and proximate result of the violation of his constitutional

16  rights by Defendants, Plaintiff suffered general and special damages as alleged in this

17  Complaint and is entitled to relief under 42 U.S.C. § 1983.

18         WHEREFORE, plaintiff prays for judgment and damages against the defendants,

19  and each of them, as follows:

20         1.    Damages, both general and special, in a sum to be proven at time of trial;

21         2.    All medical and incidental expenses in a sum according to proof;

22         3.    Punitive and exemplary damages against all individual defendants, including

23  individually named Doe defendants;

24         4.    Reasonable expenses incurred in this litigation, including attorney and expert

25  fees, pursuant to 42 U.S.C. § 1988 (b) and (c);

26         5.    Costs of suit herein; and

27  / / /

28  / / /

**SECOND AMENDED COMPLAINT**

6.    For such other and further relief as the court deems just and proper.

DATED: April 14, 2016                    Respectfully submitted,

                                         THE LAW OFFICE OF MARTIN STANLEY


                                         BY:   EDMONT T. BARRETT
                                         Attorneys for Plaintiff


**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues in this case.


Dated: April 14, 2016                    Respectfully submitted,


                                         THE LAW OFFICE OF MARTIN STANLEY


                                         BY:   EDMONT T. BARRETT
                                         Attorneys for Plaintiff

**SECOND AMENDED COMPLAINT**