JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MILLA, an individual, | ) CASE NO. CV 16-134-R |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS |
| | ) CITY OF LOS ANGELES AND |
| v. | ) RICHARD H. ULLEY'S MOTION FOR |
| | ) SUMMARY JUDGMENT |
| CITY OF LOS ANGELES, a municipal entity, et. al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Before the Court is Defendants City of Los Angeles (the "City") and Richard H. Ulley's ("Detective Ulley") (collectively, "Defendants") Motion for Summary Judgment, which was filed on January 9, 2017. (Dkt. No. 58). Having been thoroughly briefed by both parties, this Court took this matter under submission on January 26, 2017.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). To meet its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000). Once the moving party meets its initial burden of showing there is no genuine issue of

material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id*.

In his Second Amended Complaint ("SAC"), Plaintiff alleges three claims for violation of Title 42 U.S.C. § 1983: (1) unlawful imprisonment; (2) malicious prosecution; and (3) a *Monell* claim against the City. Plaintiff's claims arise from Defendants' alleged violations of Plaintiff's constitutional rights in connection with Plaintiff's conviction for a 2001 shooting for which he was later found innocent. Specifically, Plaintiff alleges that Defendants unreasonably focused their investigation on Plaintiff, tainted the eyewitness identification process, failed to properly investigate Plaintiff's alibi, and failed to disclose exculpatory evidence to the district attorney and the court. For the reasons discussed more fully below, Plaintiff's claims fail.

To assert a claim for violation of § 1983, Plaintiff is required to establish: (1) a violation of rights protected by the Constitution or created by federal statute or regulation (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986). Notably, mere negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 328. As the Supreme Court explained in *Baker v. McCollan*, "[t]he Constitution does not guarantee that only the guilty will be arrested"—"[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." 443 U.S. 137, 145 (1979) (internal quotation marks omitted). Moreover, law enforcement is not required by the Constitution to perform an error-free investigation. *Id*. at 146. The bases of Plaintiff's § 1983 causes of action are claims for malicious prosecution and unlawful imprisonment. Because probable cause existed at the time of Plaintiff's arrest and prosecution, both bases fail.

"Probable Cause exists if the arresting officers had knowledge and reasonable trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton,* 728 F.3d 1086,

1097-98 (9th Cir. 2013) (internal quotation marks omitted). Here, while Plaintiff points to several purported problems with Defendants' investigation, Plaintiff fails to provide any evidence to demonstrate Defendants prosecuted him without the requisite probable cause.

First, Defendants identify multiple bases to support their belief that probable cause existed: (1) eyewitness Ramar Jenkins' positive identification of Plaintiff as the shooter, (2) eyewitnesses Erica Hightower and Traci McCombs' tentative identification of Plaintiff as the shooter, (3) the fact that Plaintiff was near the shooting location on October 2 and October 3, 2001, (4) the fact that Plaintiff was affiliated with the 204th Street gang, and (5) the fact that Plaintiff was arrested in May 2001 near the shooting location for assault with a deadly weapon with a firearm against an African American victim. Plaintiff's disputes with the manner in which Detective Ulley and Detective Vander Horck conducted the investigation, and the tactics they employed, do not negate the fact that probable cause existed here.

Second, none of the Detectives' allegedly wrongful conduct violated Plaintiff's constitutional rights. Plaintiff points to numerous purported problems with the Detectives' investigation of his case. Most notably, Plaintiff takes issue with the Detectives handling of the witness identification process. Specifically, Plaintiff alleges that the Detectives impermissibly tainted the photographic displays. This Court disagrees.

Plaintiff's allegation that the photographic displays were unduly suggestive because Plaintiff appeared in two different photographic displays is contrary to the law. The fact that Plaintiff appeared in multiple displays does not automatically deem the photographic identification process unduly suggestive. *See, e.g., Simmons v. United States*, 377, 385 (1968) (holding that photographic identification process was not unduly suggestive where criminal defendant appeared in multiple photographs).

Furthermore, Plaintiff's claim that the photographic identification process was tainted because the Detectives failed to include photographs of all possible suspects likewise fails. Plaintiff cites to no authority that establishes the Detectives were obligated to include photographs of all possible suspects in the photographic displays. At most, the Detectives' decision not to include all possible suspects amounts to an imperfect investigation—not, as Plaintiff contends, a

1 violation of Plaintiff's civil rights.  Moreover, Plaintiff's challenge to the photographic

2 identification process on the basis that the Detectives "asked impermissible leading questions

3 calculated to elicit the identification" of Plaintiff as the shooter likewise fails to raise to the level

4 of a civil rights violation.  Again, while the Detectives' tactics may have resulted in a flawed

5 investigation, they were simply not egregious enough to implicate the constitutional safeguards of

6 § 1983.  The Court is presented with no facts that demonstrate the Detectives improperly

7 pressured any witness to identify Plaintiff as the shooter.

8 Additionally, both the judge that approved the search warrant as well as the filing District

9 Attorney, Scott Carbaugh, found probable cause existed to arrest and subsequently charge

10 Plaintiff.  The Court finds no evidence to support Plaintiff's contention that the Detectives made

11 material omissions and misrepresentations to either the judge, in connection with the search

12 warrant, or DA Carbaugh.  In fact, the evidence points to the contrary.  The Detectives disclosed

13 all of their identification procedures to DA Carbaugh, along with the entire contents of their

14 Murder Book, their Follow-Up Investigation Report, witness statements, taped recordings of

15 interviews, and their Chrono Log which detailed their investigative efforts.  Importantly, the

16 materials provided by the Detectives to DA Carbaugh also included (1) Detective Vander Horck's

17 notes regarding the non-identification of Plaintiff by certain witnesses and (2) Plaintiff's denial of

18 knowledge of the murder and denial of being present at the scene of the crime.  With this

19 information, DA Carbaugh determined that probable cause existed to prosecute Plaintiff.

20 The Court is likewise unconvinced that Defendants' failed to adequately investigate

21 Plaintiff's alibi.  It is undisputed that Defendants made an effort to investigate Plaintiff's statement

22 that he was at his girlfriend's apartment the evening of the crime.  The Detectives attempted to

23 interview Plaintiff's girlfriend, Sandra Jauregui, but she failed to appear for her scheduled

24 interview and could not be reached by phone.  Moreover, the Detectives tried to interview

25 Juaregui's then-roommate, Irma Navarro, but she refused.  Thereafter, the Detectives spoke with

26 residents in the neighborhood to gather more information about Plaintiff's alibi.  Plaintiff's

27 concerns regarding the adequacy and thoroughness of the Detectives' investigation into his alibi

28 again suggests, at most, that the Detectives executed a less than perfect operation.  This does not

4

1  rise to the level of a violation of Plaintiff's constitutional rights. As already established, the
2  Detectives were not constitutionally required to run a flawless investigation. The evidence
3  Plaintiff presents simply does not negate the existence of probable cause.

4  Third, the Court finds no basis to support Plaintiff's allegation that Defendants failed to
5  meet their *Brady* obligations. "*Brady* requires both prosecutors and police investigators to
6  disclose exculpatory evidence to criminal defendants. To state a claim under *Brady*, the plaintiff
7  must allege that (1) the withheld evidence was favorable either because it was exculpatory or
8  could be used to impeach, (2) the evidence was suppressed by the government, and (3) the
9  nondisclosure prejudiced the plaintiff." *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011)
10 (internal citations omitted). "As to the prejudice prong, the Supreme Court has stated that 'strictly
11 speaking, there is never a real "*Brady* violation' unless the nondisclosure was so serious that there
12 is a reasonable probability that the suppressed evidence would have produced a different verdict.'"
13 *Id*. (quoting *Strickler v.* Greene, 527 U.S. 263, 281-82 (1999)).

14 During Plaintiff's trial, the Detectives produced to Plaintiff's defense counsel, Bruce
15 Brown, the Murder Book, photographs the Detectives utilized in their investigation and all tape
16 recorded interviews. Despite this, Plaintiff alleges that Defendants failed to convey "multiple
17 issues concerning the identification process and their improper investigation." However, this
18 assertion falls short of Plaintiff's burden to demonstrate that Defendants withheld or suppressed
19 material information that prejudiced him. Again, the issues Plaintiff identified with Defendants'
20 investigation do not constitute a violation of his civil rights, and the Court is unconvinced that
21 Defendants' failure to convey these purported issues, and every detail of Plaintiff's alibi,
22 constituted a *Brady* violation. There is nothing in the record to suggest that had Defendants
23 conveyed the information which Plaintiff alleges was wrongfully withheld a different verdict
24 would have resulted. *Almada*, 640 F.3d at 939. The evidence presented to this Court simply does
25 not support Plaintiff's assertion that Defendants concealed exculpatory information. For the
26 reasons stated above, Plaintiff's § 1983 claims against Detective Ulley fail.

27 Because Plaintiff fails to establish any constitutional violation occurred during the
28 investigation and prosecution of his case, his *Monell* claim against the City also fails. Finally, the

1 | Court denies Plaintiff's request for a continuance under Federal Rule of Civil Procedure 56(d).

2 | **IT IS HEREBY ORDERED** that Defendants City of Los Angeles and Richard H. Ulley's

3 | Motion for Summary Judgment is GRANTED.  (Dkt. No. 58).

4 | Dated: February 13, 2017

_____

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE