UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   IN CHAMBERS ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [58]

Marco Milla ("Plaintiff") brings claims under 42 U.S.C. § 1983 against two Los Angeles Police Department detectives, Richard H. Ulley ("Ulley") and John Vander Horck ("Vander Horck") (together "the Detectives"), and the City of Los Angeles (all together "Defendants").

Having thoroughly examined the previous litigation record, the parties' supplemental briefings, and the attached exhibits, the Court concludes that no reasonable juror could find that the Detectives were the proximate cause of Plaintiff's injury. Accordingly, the Court GRANTS Defendants' motion for summary judgment.

### I.   Factual and Procedural Background

The facts and procedural history of this case have been extensively explained in the parties' previous summary judgment briefings, *see* Dkts. 58, 67, but are briefly recounted here.

The Detectives investigated Plaintiff for murder in 2001 and presented their findings to Deputy District Attorney ("DDA") Scott Carbaugh[1] on October 25, 2001. Dkt. 188 (Defendants' Supplemental Brief Regarding Prosecutor's Independent Judgment ("DSB")) at 2. DDA Carbaugh filed charges against Plaintiff later that day. *Id.* at 3. The prosecution was led by another DDA named Rosales, who obtained a conviction on all charges. Dkt. 58 (Defendants' Motion for Summary Judgment) at 10–11.

---

[1] Plaintiff did not assert his claims against DDA Carbaugh.

:

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

In 2012, after testimony from a new eyewitness who had recently entered witness-protection for gang-related testimony, Plaintiff filed a petition for habeas corpus. *Id.* at 11–12. The new eyewitness provided credible and detailed information regarding the murder, including who was present at the scene, who fired the weapon, and how that individual obtained the weapon. Dkt. 64-1 (District Attorney's Post-Habeas Memorandum) at 5–6. Plaintiff's petition was granted in 2014 and a new trial was ordered. *Id.* at 12. In January 2015, the District Attorney's Office dismissed the case rather than retrying it. *Id.*

Later that year, Plaintiff filed the instant lawsuit under 42 U.S.C. § 1983. *Id.* Plaintiff alleged violations of his civil rights based on unlawful imprisonment and malicious prosecution. Dkt. 21 (Plaintiff's Second Amended Complaint ("SAC")) at ¶¶ 51–57. Plaintiff extended his claims to the City of Los Angeles. SAC at ¶¶ 58–76.

Plaintiff alleged that the Detectives' investigation was deficient and caused his imprisonment. Specifically, Plaintiff claimed that the Detectives "failed to properly investigate the other 13 possible suspects" for the murder in question and failed to thoroughly investigate Plaintiff's alibi. Dkt. 67 (Plaintiff's Opposition to Defendants' Motion for Summary Judgment) at 2. Plaintiff claimed that the Detectives presented eyewitnesses with a constitutionally impermissible photo lineup, which included Plaintiff's photograph twice in different photo arrays in violation of the standard established in *Simmons v. United States*, 390 U.S. 377, 383 (1968). *Id.* at 4–5. Next, Plaintiff asserted that the Detectives impermissibly concealed tapes of two key eyewitnesses from the DDA and used overly suggestive questioning on the tapes with both witnesses. *Id.* at 6–9. Generally, Plaintiff claimed the Detectives' entire investigation was constitutionally infirm under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

Defendants moved for summary judgment, arguing that (1) the photo line-ups complied with the Constitution; (2) probable cause existed for Plaintiff's arrest; (3) DDA Carbaugh exercised independent judgment when he filed the charges against Plaintiff; (4) the Defendants met their obligations to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963); and (5) the Defendants are entitled to qualified immunity.

The trial court to which Plaintiff's case was originally assigned[2] granted summary judgment to Defendants. However, the Ninth Circuit reversed in part the trial court's grant of summary judgment.

---

[2] Presided over by the late Judge Manuel Real.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Dkt. 123. The Ninth Circuit held as follows:

1. "[T]he District Court erred in concluding that probable cause existed because it is a question for resolution by a jury where, as here, genuine disputes over material facts exist." *Id.* at 2.

2. "The District Court erred because genuine issues of material fact existed regarding the identifications" and the question of whether they were impermissibly suggestive under *Simmons*, 390 U.S. at 383. *Id.* at 3.

3. "The District Court appropriately concluded that no *Brady* material was withheld." *Id.* at 4.

Finally, the Ninth Circuit instructed that, upon remand, the case be assigned to a different judge.[3] *Id.* at 5. On May 17, 2019, the case was assigned to this Court. Dkt. 130.

On October 15, 2019, the Court vacated the trial date after deciding to reconsider dispositive issues raised in Defendants' summary judgment motion. Dkt. 182. Specifically, the Court ordered additional briefing on the issue of the prosecutor's independent judgment in filing the indictment and prosecuting the case.[4] Dkt. 187.

Both parties provided supplemental briefs. *See* DSB; *see also* Dkt. 189 (Plaintiff's Supplemental Brief Regarding Prosecutor's Independent Judgment ("PSB")). Plaintiff submitted several appendices containing reproductions of investigative materials, including a Chronological Log ("Chrono Log"), Dkt. 190, Ex. A, and a Follow-Up Investigation Report ("FUI Report"), Dkt. 190, Ex. B. Plaintiff also

---

[3] The Ninth Circuit also reversed the trial court's grant of defendant Vander Horck's motion to dismiss based on insufficient service of process and remanded the permit the court to determine whether the period for service of process should be extended. Dkt. 123 at 4. However, in light of the ruling below, this Court need not address that issue.

[4] Plaintiff argues that the rule of mandate prohibits reconsideration of this issue because the Ninth Circuit reversed the previous trial court's grant of summary judgment. Dkt. 183 at 2. Under the rule of mandate, lower courts "are obliged to execute the terms of [an appellate court's] mandate." *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000). However, lower courts remain "free as to 'anything not foreclosed by the mandate.'" *Id.* (citing *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). "[T]he ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that have not." *Kellington*, 217 F.3d at 1093. Here, the Ninth Circuit never addressed the question of the prosecutor's independent judgment. *See generally* Dkt. 123. Accordingly, that issue is not beyond the jurisdiction of this Court.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

submitted excerpts of the deposition testimony of both Detectives. *See* Dkts. 190–96, Ex. C (Vander Horck Deposition), Ex. D (Ulley Deposition).

  **II.**  **Legal Standard**

    **A.**  **Summary Judgment**

  A motion for summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the record that] demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

  "For summary judgment, [the Court] determine[s] whether, viewing the evidence in the light most favorable to the non-moving party, 'there are any genuine issues of material fact . . . .'" *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

  Here, Plaintiff's unlawful imprisonment and malicious prosecution claims are based on his arguments that (1) the Detectives lacked probable cause to arrest Plaintiff and recommend prosecution, (2) the Detectives' photo lineups during their investigation was impermissibly suggestive, and (3) for similar reasons, the Detectives' investigation was generally infirm under *Deveraux*. Dkt. 67 at 18–19.

  However, Plaintiff must still show that the Detectives' deficient investigation caused his injury (*i.e.*, his imprisonment), which courts have interpreted to be roughly equivalent to demonstrating proximate cause. *See, e.g.*, 42 U.S.C. § 1983 ("Every person who . . . subjects, or *causes* to be subjected . . . to the deprivation of any rights . . ."); *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("[T]he plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Accordingly, Plaintiff cannot prevail on summary judgment if no reasonable juror could find that the Detectives were the proximate cause of Plaintiff's imprisonment. The primary inquiry relevant to causation here is whether DDA Carbaugh exercised independent judgment in deciding to indict Plaintiff.

### B.   Presumption of Prosecutorial Independence

Generally, the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*") *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). The intervening cause in the chain is the prosecutor's independent judgment to prosecute. *Id.*

However, that presumption can be rebutted if the plaintiff shows that the investigating officers "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).[5]

Evidence establishing negligence by the investigating officers is insufficient to rebut the presumption. *Smiddy v. Varney*, 803 F.2d 1469, 1472 (9th Cir. 1986) ("*Smiddy II*") ("*Smiddy I* did not authorize the district court to hold that a negligent police investigation invariably creates an unbroken chain of causation making the officers liable for all harm . . . ."); *see also id.* ("The court of appeals would not have remanded this case to the district court for a new trial on damages if negligence in the preparation of the police investigation report were sufficient to overcome the presumption that the prosecutor independently exercised her official duty in instituting the prosecution.").

---

[5] The Court is aware that the Supreme Court has suggested that the absence of probable cause may be sufficient to rebut the presumption where that absence is coupled with a retaliatory motive. *See Hartman v. Moore*, 547 U.S. 250, 265 (2006) ("[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision."). However, the discussion of retaliatory motives suggests that *Hartman* may be limited to actions under the First Amendment. *See Beck*, 527 F.3d at 873 (Ikuta, J., concurring in part and dissenting in part) ("*Hartman* indicates that the prosecutor's intervening action will not immunize the police officers *from a First Amendment retaliatory arrest claim* if [plaintiff] can establish that the police officers lacked probable cause and had a retaliatory intent.") (emphasis added). Moreover, no evidence here suggests that the Detectives had a retaliatory motive.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Rather, the investigating officers must have *intentionally* or *knowingly* fabricated evidence, concealed evidence, pressured the prosecutor, or otherwise misled the prosecutor. *See id.* at 1471 (noting plaintiff required to prove facts showing undue pressure, intentional withholding of relevant information, or provision of false evidence by investigators); *see also Awabdy*, 368 F.3d at 1067 (same).

"The plaintiff bears the burden of producing evidence to rebut [the] presumption." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). Mere speculation is insufficient to meet that burden; rather, the evidence must be enough that "a reasonable jury could conclude that the arresting officers, through false statements and material omissions in their reports, prevented the prosecutor from exercising independent judgment." *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991).

Plaintiff argues that, because DDA Carbaugh was not deposed here, critical evidence is unavailable and, accordingly, the burden is on the Defendants to show that the prosecutor exercised independent judgment. PSB at 2. Plaintiff is correct that the presumption is inapplicable where evidence relevant to challenging the presumption is unavailable. *Smiddy I*, 665 F.2d at 267–68.

However, the mere absence of the prosecutor's testimony is—without a sufficient reason for that absence—insufficient to flip the burden. Rather, the prosecutor's absence is only sufficient to flip the burden if the absence arises from the prosecutor's invocation of the work-product privilege or from another valid excuse.[6] *See Beck*, 527 F.3d at 865 ("[W]e observe that the prosecutor [] asserted privilege rather than testifying as to whether he felt pressure from the police to make his charging decision and whether he was influenced by the police officers' felony submission. Critical evidence necessary to rebut the *Smiddy I* presumption of independence is *therefore* unavailable.") (emphasis added).

Here, the Court has not been directed to the reason(s) for Plaintiff's decision not to depose DDA Carbaugh. The Court will not speculate as to the reason(s) behind that decision. Absent an invocation of privilege or another valid excuse, DDA Carbaugh's absence does not flip the burden.

---

[6] The Court recognizes that, in *Smiddy I*, the Ninth Circuit noted that the presumption would be inapplicable if relevant evidence were unavailable "for reasons of privilege *or otherwise*." 665 F.2d at 267–68. The Court is not persuaded that this language allows a Plaintiff to flip the burden merely indicating that the prosecutor's testimony is missing. Rather, the Court finds that the language "or otherwise" still requires *some valid excuse* for the prosecutor's missing testimony (e.g., a deceased prosecutor that a plaintiff could not depose even if he or she wanted to).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Accordingly, Plaintiff cannot prevail if no reasonable juror could find that the Detectives knowingly misrepresented or concealed information from DDA Carbaugh with the intent to mislead.

### III. Analysis

Turning to the merits, Plaintiff argues that DDA Carbaugh "was either given misleading information or not given all information needed to make an independent judgment." PSB at 1. Specifically, Plaintiff argues that, at the meeting with DDA Carbaugh, the Detectives gave misleading information or withheld information regarding (1) Plaintiff's alibi, and (2) the photo identifications that occurred prior to the meeting. *Id.* at 3–12. The Court will address each argument in turn.

### A. Plaintiff's Alibi

Plaintiff argues that the Detectives provided misleading or incomplete information regarding Plaintiff's alibi. Specifically, Plaintiff and his friend Celendonio "Alex" Velarde told detectives that, when the murder occurred, they were at Plaintiff's girlfriend Sandra's home in Downey. Chrono Log at 22. Plaintiff alleges there is a genuine issue of material fact whether this alibi was withheld from DDA Carbaugh or provided to DDA Carbaugh in an inaccurate or misleading manner. PSB at 3–9.

Upon a review of the record, the Court identified three different documents provided for DDA Carbaugh's review on October 25, 2001, each of which contains the details of Plaintiff's alibi:

(1) The Chrono Log, in which the Detectives note that "[Plaintiff] said he was at his girlfriend 'Sandra's' apartment in Downey during the time of the murder." Chrono Log at 22. Velarde corroborates Plaintiff's statement. *Id.* Below that note, on the same page, The Detectives indicated that, the day after Plaintiff explained his alibi, Sandra visited Plaintiff at the police station. *Id.* The Detectives stated that they exchanged information with her and "wanted to interview her A.S.A.P." *Id.*

(2) The FUI Report, in which the Detectives summarized their interviews with Plaintiff and Velarde and stated that, "[i]n sum, [Plaintiff and Velarde] denied all knowledge of the murder and denied being at or near the scene when it occurred." FUI Report at 9.

(3) The "Murder Book" containing a variety of witness statements, photo arrays, and other investigative materials. Included in the Murder Book were detailed summaries of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

Detectives' interrogations of Plaintiff and Velarde. *See* Dkt. 64-4 (Ex. D to Stanley Decl. ("Murder Book")) at 18–19, 26–27; *see also* Dkt. 64 (Stanley Decl.) at ¶ 11 ("Exhibit D is a true and correct copy of excerpts from the Murder Book produced to my office in the course of discovery in this case."). Those summaries included the details of Plaintiff's alibi. Murder Book at 18 ("When asked where he was on the night of the [murder], Milla stated he was at his girlfriend Sandra's on that Saturday and indicated Velarde and Sandra's roommate were also there."); *id.* at 26–27 ("[Velarde] stated that on the night of the [murder], he and [Plaintiff] were at Sandra's house in Downey.").[7]

Plaintiff argues that the FUI Report "misrepresents" his alibi because it summarizes the alibi rather than including the details regarding where exactly Plaintiff claimed he was. PSB at 4; *see also* FUI Report at 9 ("In sum, Plaintiff and Velarde] denied all knowledge of the murder and denied being at or near the scene when it occurred.").

No reasonable juror could find that this constitutes a "misrepresentation." Indeed, Plaintiff does not explain how referencing an alibi without providing details constitutes a misrepresentation, particularly when the details of the alibi are contained in other documents provided to DDA Carbaugh. *See* Chrono Log. at 22; *see also* Murder Book at 18–19, 26–27.

Next, relying on the Detectives' inability to recall the details of their meeting with DDA Carbaugh, Plaintiff argues that the Chrono Log may not have been provided to DDA Carbaugh. *See* PSB at 9 ("When asked if [Detective Ulley] gave the Chronological Log to the district attorney, he says, 'I don't recall if I did that personally.'").[8]

Plaintiff essentially argues that the Detectives' failure to recall the details of their nearly twenty-year old meeting implies the intentional withholding of evidence by the Detectives during that meeting.

---

[7] Additional details regarding the alibi were also included in these interview summaries but are omitted here.

[8] Plaintiff also asserts that information regarding the alibi was withheld because a particular page of the Chrono Log may not have been given to DDA Carbaugh. *See* PSB at 6 ("When asked if page 23 of the [Chrono Log] was given to the district attorney at the filing meeting on 10/25/2001, [Detective Vander Horck] answered, 'I don't think so.'"). Plaintiff does not explain how the absence of Chrono Log's page 23 would be misleading. Regardless, no reasonable juror would find that page 23's absence would be misleading, as that page does not include any information regarding Plaintiff's alibi. *See* Chrono Log. at 23. Rather, page 23 notes administrative details and basic facts regarding the filing of charges against Plaintiff. *See id.*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

However, a failure of specific memory is insufficient to rebut the presumption of independence. *See Newman v. Cty. of Orange*, 457 F.3d 991, 996 (9th Cir. 2006) ("We are not convinced that the fact that an officer may have forgotten, over a year after the fact, that he listened to an audio recording that may or may not have recorded anything can, by itself, be considered 'ample evidence from which a reasonable jury could conclude that the arresting officers . . . prevented the prosecutor from exercising independent judgment.'").

Second, assuming *arguendo* that the Chrono Log was not provided to DDA Carbaugh, a reasonable juror still could not find that the alibi evidence was withheld from DDA Carbaugh because that evidence—and its specific details—were included in the Murder Book and the FUI Report, both of which were undisputedly provided to DDA Carbaugh. *See* Dkt. 65 (Plaintiff's Statement of Genuine Disputes ("PSGD")) at ¶ 36 ("The Detectives also brought their Murder Book for Carbaugh to examine which contained our entire investigation to date, including but not limited to the Chrono Log, the witness and victim statements, photographic displays and the photo identification forms the witnesses completed, the search warrant, and the Follow-Up Investigation Report Ulley drafted which summarized the entire investigation to that point.").[9]

---

[9] Plaintiff labels this fact as "[d]isputed." *Id.* However, "a genuine dispute of material fact is not created merely by labeling a fact 'disputed' or 'partially disputed.'" *Barrios v. Albuquerque Bernalillo Cty. Water Util. Auth.*, 2018 WL 2107789, at *2 (D.N.M. May 7, 2018). Rather, the non-moving party must set forth specific evidence showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact [] is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) ("[I]f a genuine issue exists for trial, [the nonmoving party] must identify that issue and *support it with evidentiary materials*.") (emphasis added); *Nicolas v. City of Riverside, Cal.*, 486 F. App'x 699, 699–700 (9th Cir. 2012) (affirming grant of summary judgment where "[none] of the evidence cited [by plaintiff] controverted the fact on which the district court relied"). Here, Plaintiff's evidence in support of this "dispute" does not controvert the fact that the Murder Book—which contained the FUI Report, the Chrono Log, and the summaries of Plaintiff's and Velarde's interrogations—was provided to DDA Carbaugh. Indeed, at no point does Plaintiff identify evidence controverting the fact that the Murder Book was provided to DDA Carbaugh. Nor does Plaintiff state, as his own undisputed fact, that the Murder Book was not provided to DDA Carbaugh. Instead, Plaintiff's evidence focuses on the Detectives' inability to recall details of their discussion with DDA Carbaugh, or their failure to mention particular details of the investigation during that discussion. *See, e.g.*, PSGD at ¶ 36 (assertion that defendants "suppressed key information regarding [Plaintiff's] alibi" supported by deposition testimony showing that Detective Vander Horck did not know if details of alibi were discussed at the meeting); *id.* (noting that Detective Ulley "does not recall advising the district attorney at any time prior to trial that [Plaintiff and Velarde] both said they were at Sandra Jauregui's apartment"). This evidence does not controvert the material fact that the Detectives brought the Murder Book with them on October 25, 2001 for DDA Carbaugh to review. Accordingly, Plaintiff has failed to create a "genuine" dispute of material fact regarding whether the Murder Book was provided to DDA Carbaugh. *Anderson*, 477 U.S. at 250.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

    Next, Plaintiff repeatedly highlights the Detectives' inability to recall the details of their discussions with DDA Carbaugh regarding the alibi.[10]  Plaintiff also uses similar evidence to argue that DDA Carbaugh did not independently review the investigative documents provided to him by the Detectives.[11]  Plaintiff presumably does so to establish that (1) DDA Carbaugh relied entirely on the verbal presentation by the Detectives, and (2) the Detectives failed to mention the alibi at all during the meeting and did so with the intent to mislead DDA Carbaugh.

    The Court recognizes that a plaintiff can rebut the presumption of independent judgment by showing that the prosecutor relied solely on the detectives' reports and statements.  *See Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir.1988); *see also Barlow v. Ground*, 943 F.2d 1132 (9th Cir.1991).  However, in those cases, the detectives' statements "omitted critical information."  *Newman*, 457 F.3d at 994.

    Here, no reasonable juror could find such an omission, let alone an intentional or knowing omission.  First, as noted above, the Detectives' inability to recall the details of their twenty-year old discussion with DDA Carbaugh cannot establish that certain details were omitted from that discussion and, therefore, the prosecutor did not act with independent judgment.  *See id.* at 996.

    Second, even assuming *arguendo* that DDA Carbaugh only listened passively during the meeting on October 25, 2001—*i.e.*, he did not actively review the materials provided by the Detectives in the Murder Book—no reasonable juror could find that the Detectives omitted any reference to Plaintiff's

---

[10] *See, e.g.* PSB at 5 ("To the best of [Detective Vander Horck's] recollection, he thinks he had a discussion with the filing deputy regarding a potential alibi for [Plaintiff], but he doesn't know what was said, and he doesn't know if any of the details of the alibi were discussed at that first meeting."); *id.* at 6 ("[Detective Vander Horck] didn't recall telling the district attorney that both [Plaintiff] and Velarde said they were at Sandra's house when the murder occurred."); *id.* ("Both [Plaintiff] and Velarde were separated from the time the detectives met up with them until the time they made their statements about being at Sandra's house, (Ex. C, pg. 89.), and [Detective Vander Horck] had no evidence or belief that [Plaintiff] and Velarde discussed the case to come up with an alibi while in police custody."); *id.* at 9 ("[Detective Ulley] does not recall telling the filing district attorney that he had not interviewed the two corroborating alibi witnesses, but intended to interview them in the future. . . . [And he] did not remember whether he had told the filing deputy at the filing meeting that he had not completed his alibi investigation.").

[11] *See, e.g.*, PSB at 7–8 ("[Detective Ulley testified that], [a]t the conclusion of presenting the case, the filing district attorney decided to file against Plaintiff [and] said that his decision to file was based on the information provided at the meeting."); *id.* at 9 ("[Detective Ulley] does not know what the filing deputy read at the filing meeting.").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

alibi during their verbal presentation to DDA Carbaugh.  *See Anderson*, 477 U.S. at 248 (factual dispute only genuine if a reasonable juror could find in the other party's favor).  More specifically, a reasonable juror could not find that the Detectives *intentionally* or *knowingly* omitted a reference to Plaintiff's alibi, which Plaintiff must show to rebut the presumption of independent judgment.  *See Smiddy II*, 803 F.2d at 1472.  The evidence is undisputed that DDA Carbaugh had access during the meeting to the Murder Book, which contained the FUI Report and summaries of the interrogations of Plaintiff and Velarde.[12]

Accordingly, the Court rejects Plaintiff's argument that DDA Carbaugh was unable to exercise independent judgment because the Detectives provided misleading or incomplete information regarding Plaintiff's alibi.

### B.    Photo Identifications

Plaintiff also argues that DDA Carbaugh could not exercise independent judgment because he was given misleading or incomplete information regarding the photo identifications that occurred prior to the meeting on October 25, 2001.  He points to (1) the Detectives' inability to recall the details of their discussion with DDA Carbaugh regarding photo identification evidence, and (2) particular statements in the FUI Report and elsewhere regarding one of the positive photo identifications.  PSB at 6–11.

As to the former, the Court rejects that argument for the same reasons it rejected it when discussing Plaintiff's alibi argument above.  *See Newman*, 457 F.3d at 996; *see also supra* at 8–10.

Regarding the latter, the FUI Report included the following statement: "Detectives went to [Ramar] Jenkins' home to show him photo display folder 'E' . . . Jenkins then viewed the folder and positively identified Milla as the shooter."  FUI Report at 8.  Additionally, Detective Ulley stated that he told DDA Carbaugh about "the positive identification by Jenkins."  Dkt. 58-2 (Ulley Decl.) at ¶ 47.

Plaintiff argues that these statements misrepresented Jenkins' identification.  Specifically, Jenkins' "positive" identification was actually the second identification made by Jenkins; the tape recording of the first identification resulted in poor audio quality, so the Detectives used a different tape to re-record a second identification by Jenkins.  *Id.* at 8.  Detective Vander Horck's notes indicate that, during the first identification, Jenkins did not say that he was "positive" Plaintiff was the shooter;

---

[12] *See supra* note 9.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

instead, he said that "[Plaintiff] looks most like the shooter out of all of them." Dkt. 64-1 (District Attorney's Post-Habeas Memorandum) at 23. But the FUI Report said Jenkins "positively identified" Plaintiff as the shooter so, according to Plaintiff, that report—and Detective Ulley's statement to DDA Carbaugh—was misleading.

In support of this argument, Plaintiff points to the District Attorney's Post-Habeas Memorandum, which described a statement that Jenkins positively identified Plaintiff as "not quite accurate and misleading." *Id.* Plaintiff also notes that Detective Ulley was impeached on this point at trial: he initially testified that Jenkins positively identified Plaintiff but, after being shown Detective Vander Horck's notes, he recalled that Jenkins first said that Plaintiff looks most like the shooter out of all of the displayed photographs. *Id.* at 8.

No reasonable juror could find that this evidence satisfies Plaintiff's burden of rebutting the presumption of prosecutorial independence. First, Plaintiff produced no evidence to indicate that Detective Ulley *knowingly* omitted Jenkins' first identification from the FUI Report and his discussion with DDA Carbaugh, let alone with the *intent to mislead* DDA Carbaugh.[13]

Second, Plaintiff does not dispute that Detective Vander Horck's notes were provided to DDA Carbaugh as part of the Murder Book.[14] This further undermines any suggestion that the Detectives were intentionally misleading DDA Carbaugh: any such effort would be futile because the Murder Book included Detective Vander Horck's notes, which stated that Jenkins initially said that "[Plaintiff] looks most like the shooter out of all of them." Dkt. 60-4 (Defendants' Appendix in Support of Motion for Summary Judgment), Ex. 32 (Notes of Detective Vander Horck). Accordingly, based on the evidence before the Court, no reasonable juror could find that the Detectives knowingly omitted the details of Jenkins' first identification with the intent to mislead DDA Carbaugh. *See Anderson*, 477 U.S. at 248.

---

[13] For similar reasons, Plaintiff's reliance on statements drawn from the DA's Post-Habeas Memorandum is unavailing. The Court is not bound by that office's conclusion. Moreover, the statements do not directly address the essential issue—whether the Detectives knowingly or intentionally misled DDA Carbaugh. Even accepting that office's conclusion that the statement itself is misleading, that only establishes negligence, not that Detective Ulley intentionally misled the DDA.

[14] *See* Dkt. 60-4 (Defendants' Appendix In Support of Motion for Summary Judgment), Ex. 32 (Detective Vander Horck's handwritten notes from 10/25/2001 meeting with Ramar Jenkins); *see also* PSGD at ¶ 4 ("undisputed" that Detectives wrote notes during their investigation and "officers' notes" included in Murder Book); *id.* at ¶ 36 ("The Detectives also brought their Murder Book for [DDA] Carbaugh to examine."); *supra* note 9.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

    Finally, to the extent Plaintiff argues that the Detectives failed to include the photo arrays in the Murder Book, the Court has reviewed the record and concludes that no reasonable juror could find that the photo arrays were intentionally or knowingly omitted from the Murder Book. First, the excerpt of the Murder Book identified by Plaintiff includes three of the photo arrays: folders "A," "D," and "E." Dkt. 64-4 at 20, 23–24. That same excerpt includes documents naming the individuals who were included in folders "B" and "C." *Id.* at 21–22. And the table of contents for the Murder Book includes a section titled "Photo Line-up." Dkt. 60-1 (Defendants' Appendix in Support of Motion for Summary Judgment), Ex. 3 (Murder Book Table of Contents).

    Second, other evidence further indicates that all the photo arrays were included in the Murder Book for DDA Carbaugh's review. *See, e.g.*, Dkt. 58-1 (Ulley Decl.) at ¶ 47 ("We also brought our Murder Book with us for Carbaugh to examine which contained our entire investigation to date, including . . . photographic displays and the photo identification forms the witnesses completed."); Dkts. 60-1, 60-2 (Defendants' Appendix in Support of Motion for Summary Judgment), Exs. 6–9, 25 (photo array folders "A," "B," "C," "D," and "E"); PSGD at ¶ 36 ("The Detectives also brought their Murder Book for Carbaugh to examine which contained our entire investigation to date, including . . . photographic displays and the photo identification forms the witnesses completed.").[15]

    Indeed, nowhere does Plaintiff dispute that the photo arrays were included in the Murder Book. Rather, his argument is that the Detectives failed to mention the details of their photo identification procedures—*i.e.*, they failed to mention that Jenkins' identification was re-recorded or to specifically mention that Plaintiff's picture was included on two arrays. PSB at 6–11. Even if this were true, no evidence supports any *knowing* misrepresentation or omission with the *intent to mislead* DDA Carbaugh

---

[15] As noted above, *supra* note 9, Plaintiff's dispute as to this issue of fact focuses not on the contents of the Murder Book or whether it was provided to DDA Carbaugh. Rather, it focuses on the Detectives' inability to recall details of their discussion regarding photo identification or their failure to advise DDA Carbaugh of particular details regarding those photo identifications. *See, e.g.*, PSGD at ¶ 36 ("[Detective Ulley] does not recall stating to the district attorney during the filing meeting that Ramar Jenkins first said only that the person in slot number 2 of Line-up 'E' looked most like the shooter of all of the photographs displayed."); *id.* ("The Detectives failed to advise the district attorney that Ramar Jenkins viewed a photograph of [Plaintiff] in photo Line-up 'B' on October 11, 2001 and did not identify [Plaintiff] at that time, prior to identifying [Plaintiff] in photo Line-up 'E' on October 22, 2001."). These assertions do not create a dispute regarding whether the photo arrays were provided for DDA Carbaugh's review, let alone whether they were intentionally withheld from DDA Carbaugh. *See Nilsson*, 854 F.2d at 1545 ("[I]f a genuine issue exists for trial, [the nonmoving party] must identify that issue and *support it with evidentiary materials*.") (emphasis added).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

because the photo arrays were included in the Murder Book. Any such assertion is mere speculation, and no reasonable juror could find otherwise. *See Anderson*, 477 U.S. at 248.

Accordingly, the Court rejects Plaintiff's argument that DDA Carbaugh was unable to exercise independent judgment because he was given misleading or incomplete information regarding the photo identifications that occurred prior to the meeting on October 25, 2001.

### IV. Conclusion

Plaintiff's essential point is that the Detectives cannot remember the details of a nearly twenty-year old meeting with DDA Carbaugh. This inability to recall, Plaintiff argues, creates a genuine issue of fact as to whether DDA Carbaugh exercised independent judgment.

However, as explained above, the evidence is undisputed that the Murder Book was presented to DDA Carbaugh. *See supra* note 9. Indeed, Plaintiff did not produce evidence or argue that the Murder Book was not presented to DDA Carbaugh. And that Murder Book included—at the least—the FUI Report, the summaries of the interrogations of Plaintiff and Velarde (*i.e.*, Plaintiff's alibi witness), the photo arrays, and Detective Vander Horck's notes regarding Jenkins's statements during the first tape recorded photo identification. Under these circumstances, no reasonable juror could find that the Detectives intentionally prevented DDA Carbaugh from exercising his independent judgment at the October 25, 2001 meeting. Accordingly, the Detectives cannot be held liable for damages resulting from any infirmities during their investigation. *Smiddy I*, 665 F.2d at 266.

The Court recognizes the immense suffering experienced by Plaintiff. He was arrested at the age of nineteen on October 24, 2001. He spent the next thirteen years—the entirety of his twenties—in prison for a murder he did not commit. The injustice of his conviction is not mitigated merely by his release.

Yet, the Court is "constrained nonetheless by the rule of law." *Smiddy II*, 803 F.2d at 1473. For the reasons discussed above, no reasonable juror could find that the Detectives knowingly misrepresented or concealed information from DDA Carbaugh with the intent to mislead him or prevent him from exercising his independent judgment.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-00134-SVW-AJW | Date | September 2, 2020 |
|---|---|---|---|
| Title | *Marco Milla v. City of Los Angeles et al.* | | |

    Accordingly, the Defendants' motion for summary judgment is GRANTED. The pending motion to dismiss Detective Vander Horck, and the motions in limine which the Court took under submission, are dismissed as moot.

    IT IS SO ORDERED.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |