**LAW OFFICE OF MARTIN STANLEY**
Martin Louis Stanley [State Bar No. 102413]
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90401
Telephone: (310) 399-2555
Facsimile: (310) 399-1190

Edmont T. Barrett [State Bar No.: 74117]
Post Office Box 607
Diamond Springs, California 95619
Telephone: (530) 642-8468
Facsimile: (530) 653-2449
Attorneys for Plaintiff MARCO MILLA

**MICHAEL N. FEUER**, City Attorney (SBN 111529)
**SCOTT MARCUS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney
**GEOFFREY PLOWDEN**, Deputy City Attorney
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012 Tel.: (213) 978-7038
Email: Geoffrey.Plowden@lacity.org
*Attorney for Defendants* RICH ULLEY AND JOHN VANDER HORCK, deceased

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MILLA an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal entity; COUNTY OF LOS ANGELES, DETECTIVE R. ULLEY AND DETECTIVE J. VANDER HORCK, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:16-cv-00134-FWS-MRW<br>Hon. Fred W. Slaughter, Judge Presiding<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Current Trial Date**<br>Date:           June 14, 2022<br>Time:          9:00 A.M.<br>Courtroom: 10D<br><br>**Current Pre-Trial Conference Date**<br>Date:           May 23, 2022<br>Time:          3:00 P.M.<br>Courtroom: 10D |

The following is the joint case management statement per the Court's order:

a. **The date the case was filed:** Originally filed in the Los Angeles County Superior Court on August 7, 2015, Case No.: BC 590811; removed to U.S. District Court on January 7, 2016.

b. **A list or description of each party;** Plaintiff Marco Milla and Defendants City of Los Angeles, Det. R. Ulley and Det. J Vander Horck (who passed away however the City has agreed to indemnify any judgment for compensatory damages against him).

c. **A summary of all claims, counterclaims, crossclaims, or third party claims:** Plaintiff Marco Milla was wrongfully arrested, charged, and convicted of a murder he did not commit, sentenced to life without parole, and imprisoned for a total of 4,675 days from October 24, 2001 until August 11, 2014, after which he was released by the Los Angeles County Superior Court after granting a petition for habeas corpus. The same court thereafter issued an *Order Finding Factual Innocence* pursuant to California Penal Code section 1485.55 on January 13, 2016.

The United States Court of Appeals held that Plaintiff Milla "was wrongfully arrested, convicted, and incarcerated for over 10 years for murder."

The United States Court of Appeals opinion held that the issues to be tried herein include but are not limited to probable cause, "whether the detectives asked leading questions during the witness interviews, whether the witnesses' earlier testimony contradicted later identifications, and whether the detectives failed to investigate Milla's

alibi." Further the Court of Appeals determined that "genuine issues of material fact existed regarding [Milla's] identifications" including, but not limited to "whether the witnesses in this case had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure from [government] officials or others."

As the 9th Circuit Stated:

"There were genuine issues of material fact regarding whether the detectives gave the prosecutor misleading or incomplete information regarding the photo identifications of Milla—the only evidence tying Milla to the shooting—and regarding Milla's alibi. The presumption of prosecutorial independence will be considered rebutted in circumstances including where the detectives "knowingly provided misinformation to [the prosecutor], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy, 368 F.3d at 1067.

Taking the facts in the light most favorable to Milla, the circumstances surrounding what the detectives did or did not communicate to the prosecutor about Ramar Jenkins's identification, the photo lineups, and Milla's alibi are questions that must go to a jury. A reasonable juror could find that Milla had rebutted the presumption where the detectives told the prosecutor that Jenkins positively identified Milla without informing the prosecutor that the interview was re-taped, that the second

interview was a set of highly leading questions, and that Jenkins had already been shown Milla's photo as part of an array on a previous occasion and had not identified Milla. It is a closer call whether the detectives' representation of Milla's alibi—failing to specifically mention that both Milla and Alex Velarde said they were together at Milla's girlfriend's apartment or that the detectives had not yet interviewed the other alibi witnesses or otherwise investigated Milla's alibi—would, on its own, be sufficient to rebut the presumption of prosecutorial independence; however, in conjunction with the representations and/or omissions regarding the photo identifications, it further highlights why these questions must go to a jury . . . The fact that the detectives brought hundreds of pages of materials to their meeting with the prosecutor, among which details of the photo identifications and alibi might have been discoverable, is beside the point—there was nothing in the record suggesting that the prosecutor actually reviewed the written materials during what was a verbal presentation by the detectives or afterwards, before making the decision to charge Milla. Neither can the detectives' lack of memory prevent Milla from surviving summary judgment where he put forward other evidence to create genuine disputes of material fact and where a reasonable juror could consider the entirety of the record and conclude that the detectives acted recklessly or maliciously in their representations or lack thereof to the prosecutor."

Defendants submit the prosecution of plaintiff was initiated with ample probable cause and no recklessness or malice. Plaintiff was held to answer at preliminary hearing. The filing DA reviewed all notes pertaining to ID's and independently chose to file charges, a superseding proximate cause. Further, Detective Ulley and civilian witnesess who identified Plaintiff during the presentation of photographic arrays were cross-examined at the jury trial with regard to those identification procedures. To the extent Plaintiff knew of or believed a particular third-party committed the murder and attempted murders, he could have investigated those persons and presented a third-party culpability defense at the criminal trial. These events cut-off liability to the defendants for any false imprisonment or incarceration damages following imposition of criminal charges.

Plaintiff responds, among other things, that if defendant was correct there could never be a claim that the 9th Circuit has twice found was valid, or any case ever after a filing for that matter- defendant's position is simply contrary to law. There is no doubt that the 9th Circuit questioned the alleged review by the filing deputy and, further, what happened thereafter (trial, etc) based on tainted evidence is irrelevant and has nothing to do with whether there was probable cause at time time of the arrest- additionally Ramar Jenkins, the sole civilian witness that defendants claim identified plaintiff for probable cause, has recanted and stated that he was 17 and was wrongfully pushed into the identification by the defendants and, further, the tape relating to the conversation between

the detectives and Jenkins was somehow "lost" by defendants way back at the time of the interview with Jenkins.

   d. **A brief description of the events underlying the action:** On September 29, 2001, a 19-year-old African-American male, named Robert Hightower, was shot and killed in the 1500 Block of 204th St. in the Harbor Gateway area of Los Angeles. The shooter also shot at five other people and wounded three of them.

   On October 23, 2001, Los Angeles Superior Court Judge Weisman issued a search and arrest warrant for Plaintiff Marco Milla. Plaintiff claims the warrant was issued and based on an affidavit containing, among other things, misleading, false and/or incomplete information. On October 24, 2001 Plaintiff Marco Milla was arrested pursuant to the search and arrest warrant.

   After being arrested, both plaintiff and a third person gave the police an alibi that plaintiff was elsewhere at the time of the shooting. However, the defendant detectives did not investigate the alibi prior to presenting the case for filing to the filing deputy in the District Attorney's Office, and they also left out the information regarding plaintiff's alibi in their final or closing report that was presented to the filing deputy.

   On October 25, 2001, the defendant detectives presented the case to the filing deputy at the District Attorney's Office, after which Deputy District Attorney Scott Carbaugh filed a criminal complaint charging Plaintiff Marco Milla with (1) Murder of Robert Hightower in violation of Penal Code section 187, subdivision (a), (2) Attempted

murder of Steven Flowers in violation of Penal Code section 664 and section 187, subdivision (a), (3) Attempted murder of Ramar Jenkins in violation of Penal Code section 664 and section 187, subdivision (a), (4) Attempted murder of Deandre White in violation of Penal Code section 664 and section 187, subdivision (a), (5) Attempted murder of Erica Hightower in violation of Penal Code section 664 and section 187, subdivision (a), and (6) Attempted murder of Senya Williams in violation of Penal Code section 664 and section 187, subdivision (a).  Among other things, Plaintiff claims Carbaugh was provided inaccurate, false and/or misleading information.

On the dates of December 2, 2002 through December 23, 2002, there was acriminal trial regarding the charges against Plaintiff Marco Milla. A jury found him guilty of all charges.

On August 3, 2003 after the court denied Plaintiff Milla's motion for new trial, Milla was sentenced as follows: (1) as to Count One, to a term of life without the possibility of parole, (2) as to Counts Two and Three, a consecutive term of life plus 25 years to life for each of Counts Two and Three, (3) As to Counts Four through Six, a concurrent term of life plus 20 years for each of Counts Four through Six, and (4) a minimum parole eligibility term of 15 years for each of Counts One through Six based on gang enhancement.

Thereafter, as mentioned above, plaintiff was found factually innocent of all crimes and was released from prison. Plaintiff claims damages as a result of the violation of his civil rights and the wrongful arrest and imprisonment.

e. **A description of the relief sought and the damages claimed with an explanation as to how damages have been (or will be) computed:** Plaintiff claims damages due to his wrongful arrest and imprisonment and long term confinement, as well as damages for life given the pain, suffering, etc., along with potential economic losses associated therewith. As of now, depending on the evidence at trial and given that plaintiff was imprisoned for over 12 years, plaintiff may seek an award well in excess of $20,000,000, plus substantial attorneys' fees and costs given the nature and extent of the complexity of the issues herein, the amount of work done, as well as the fact that there have thus far been 2 successful appeals to the 9th Circuit Court of Appeals.

f. **The status of discovery, including any significant discovery management issues, as well as any limits or cutoff dates:** Plaintiff is waiting for responses by the defendants to *PLAINTIFF MARCO MILLA'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET FOUR (4) TO DEFENDANT CITY OF LOS ANGELES*; plaintiff may also take the depositions of the *Person Most Knowledgeable* at the LAPD Scientific Investigation Division (SID) as well as other fact discovery depending on the results of that discovery. Further, Plaintiff believes that expert depositions and reports may need updating given that the deposition of the only witness who the defendants claim

positively identified Milla was just recently taken on April 6, 2022, and that plaintiff claims that the facts adduced during that deposition demonstrate additional wrongful acts on the part of the individual defendants and that plaintiff's experts should be able to opine on those issues besides they issues they have already opined on.

Defendants do not feel liability experts will assist the trier of fact in this bifurcated trial. A motion in limine as to these experts is pending. Further, it is Defendants' position that discovery is closed.

Plaintiff disagrees with defendant's contentions re experts and/or discovery. Among other things, defendants just recently participated in Ramar Jenkins deposition after court order by Magistrate and, undoubtedly defendants have deposed plaintiff's experts, they have two experts themselves, and the complexity of the issues herein justify expert witnesses on the issue of proper or improper identification procedures.

**g. A procedural history of the case, including any previous motions that were decided or submitted, any ADR proceedings or settlement conferences that have been scheduled or concluded, any appellate proceedings that are pending or concluded, and any previous referral to a magistrate judge:** On January 9, 2017, the defendants filed a motion for summary judgment (Doc. 58 et seq.). Plaintiff's opposition to the motion for summary judgment was filed on January 16, 2017 (Doc. 66 et seq.). On March 9, 2017 the District Court entered its order and judgment granting the defendants' motion for summary judgment (Doc. 119). Plaintiff then filed his notice of appeal on

March 13, 2017 (Doc. 120). Thereafter, on February 12, 2019, the Ninth Circuit Court of Appeals issued its memorandum and order affirming in part the District Court's order, reversing in part, and remanding with instructions. (Doc. 123).  On April 15, 2019, the Ninth Circuit issued its formal mandate Rule 41(a) of the Federal Rules of Appellate Procedure. (Doc. 126)

On October 15, 2019, the District Court *sua sponte* took the defendants' motion for summary judgment under submission. (Doc. 182)  On October 16, 2019, the plaintiff filed an objection to the District Court's reconsideration of the defendants' motion for summary judgment. (Doc. 183)

Then, on September 2, 2020, the District Court issues its order granting the motion for summary judgment a second time. (Doc. 197) On September 3, 2020, the plaintiff filed a notice of appeal from the District Court's order granting the defendants' motion for summary judgment. (Doc. 198)

On February 1, 2022, the Ninth Circuit Court of Appeals issued its memorandum and order reversing the decision of the District Court is reversed and remanding the case to the District Court with instructions. (Doc. 201) On February 23, 2022, the Ninth Circuit Court of Appeals issued its formal mandate pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. (Doc. 209)

**h. A description of any other deadlines in place before reassignment, including those for dispositive motions, pretrial conferences, and trials:** Hearing on writ

petition relating to witness Ramar Jenkins who is in state prison but whose deposition was taken on April 6, 2022, was set for May 17, 2022; pretrial conference set for May 27, 2022, and trial set for June 14, 2022.

i. **Any requested modification of these dates, and the reasons for the request:**

Defendants are requesting a new pretrial conference and trial be set in April, 2023, with a suitable trial date of April 25, 2023. Defense Counsel are engaged in other trials prior to that date in 2023.

j. **Whether the parties will consent to a magistrate judge for trial:**

Defendants are not willing to consent to a magistrate judge.

k. **Whether there exists an immediate need for a case management conference to be scheduled in the action, and why the parties believe such a need exists:**

Defendants do not see the need for a case management conference.

l. **A plain and specific statement of any immediate relief sought, if applicable, regarding the case schedule:**

None from the defendants.

Dated: May 6, 2022                By: /s/ MARTIN STANLEY
                                            Martin L. Stanley, Esq.
                                            Attorney for *Plaintiff*


Dated: May 9, 2022                **MICHAEL N. FEUER,** City Attorney

                                        By: /s/ *Geoffrey Plowden*
                                        **GEOFFREY PLOWDEN,** Deputy City Attorney
                                        Attorneys for Defendants

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 100 Wilshire Blvd, Suite 700, Santa Monica, California 90401.

On **May 6, 2022,** I served the foregoing document(s) **JOINT CASE MANAGEMENT STATEMENT** on the interested parties in this action by email as follows:

**Attorney for Defendants:**
Geoff Plowden
Email: geoffrey.plowden@lacity.org

BY ELECTRONIC DELIVERY DUE TO COVID-19

[**X**]   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **May 6, 2022,** at Santa Monica, California


　　　___/s/ MARTIN STANLEY___
　　　　　　Martin Stanley