**LAW OFFICE OF MARTIN STANLEY**
Martin Louis Stanley [State Bar No. 102413]
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Telephone:  (310) 399-2555

**BARRETT LAW OFFICE**
Edmont T Barrett [State Bar No. 74117]
P.O. Box 607
Diamond Springs, CA 95619
Telephone:  (530) 642-8468

Attorneys for *Plaintiff*, MARCO MILLA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MILLA an individual,<br><br>   Plaintiff,<br><br>  vs.<br><br>CITY OF LOS ANGELES a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal entity; COUNTY OF LOS ANGELES, DETECTIVE R. ULLEY AND DETECTIVE J. VANDER HORCK, and DOES 1 through 100, inclusive,<br><br>   Defendants. | Case No. CV-00134-FWS-MRW<br>Hon. Judge Fred W. Slaughter<br><br>**PLAINTIFF MARCO MILLA'S MOTION IN LIMINE NO. 5 TO PRECLUDE DEFENSE FROM ATTEMPTING TO MAKE ANY WRONGFUL CLAIM AND/OR INSINUATION THAT PLAINTIFFS' COUNSEL SOMEHOW AFFECTED THE SWORN DEPOSITION TESTIMONY OF RAMAR JENKINS; DECLARATION**<br><br>**Trial**<br>**Date:   05/16/2023**<br>**Time:   08:30 AM**<br>**Courtroom: 10D, Santa Ana**<br>**Pre-Trial Conference**<br>**Date:   05/05/2023**<br>**Time:   09:00 AM**<br>**Courtroom: 10D, Santa Ana** |

-1-
**PLAINTIFF'S MOTION IN LIMINE NO. 5**

**TO: ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that plaintiff hereby moves in limine to preclude any attempt by defense counsel to wrongfully imply or otherwise suggest that plaintiffs' counsel somehow influenced Ramar Jenkins testimony during his deposition simply because they both visited him for a brief period of time over a week before the deposition in prison to ask if he would agree to be deposed.

This motion is based on the attached declaration which demonstrates there is absolutely no evidence demonstrating any wrongdoing on plaintiffs' counsel's part and that any attempt to claim such is irrelevant, highly prejudicial and simply wrong. The motion is based on FRE 402 and 403 as well as case law cited in the points and authorities below.

DATED:  April 13, 2023                          Respectfully submitted,
                                                LAW OFFICES OF MARTIN STANLEY

                                                By:_____/s/ Martin Stanley_____
                                                MARTIN STANLEY, ESQ.
                                                Attorneys for Plaintiff MARCO MILLA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   STATEMENT OF FACTS

Both plaintiff's counsel and plaintiff are objecting to the defense counsel's attempt to insinuate or claim that plaintiffs' counsel somehow, by simply visiting Ramar Jenkins in prison to interview him and see if would agree to be deposed, affected his testimony.

Plaintiff's counsel, Barrett and Stanley, went to the trouble of locating and arranging to interview Jenkins at a remote prison in the desert in order to investigate what happened during the time that the investigating police detectives interviewed him concerning his positive identification of plaintiff in a photo six-pack on October 22, 2001. The reason they wanted to interview Mr. Jenkins was twofold:

1.   First, Ramar Jenkins had been interviewed previously, on October 11, 2001 and, even though he was shown a photo array which included a picture of Mr. Milla, he was unable to identify Mr. Milla.

2.   Second, counsel were curious about why there were two recordings of the October 22, 2001 interview. That is, the police first interviewed Mr. Jenkins and recorded it, but then interviewed and recorded Mr. Jenkins a second time. The interviewing detectives said in their report that the first recording did not record properly and it was impossible to understand what was said on the recording. Therefore, the interviewing detectives recorded a second interview in which the alleged "positive identification" was made in response to leading questions.

-3-

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

Therefore, Mr. Barrett and Mr. Stanley were curious to learn whether Mr. Jenkins could explain these discrepancies. When they heard Mr. Jenkins' answers, they asked if he would agree to be deposed in this case.

Defense counsel has implied that Messrs. Stanley and Barrett somehow inappropriately influenced his testimony, without any factual basis whatsoever. Moreover, Defense Counsel has implied that Messrs. Stanley and Barrett successfully got Jenkins to lie in only about 20 minutes; the time being verifiable by checking the records of the Litigation Office at Calipatria. And that they did this without any promises, inducements or enticements, and despite the fact that Jenkins was himself shot by the shooter, not to mention that one of his best friends was killed by the shooter.

As stated above, the truth is that counsel went to interview Jenkins because of the suspicious nature of his original identification of Milla. Remember, the first time Jenkins was shown a photo array with Milla's picture, Jenkins did not ID Milla. The second time he was shown a photo array (documented at pg. 8 of the 9-page report attached above, the cops wrote:

"Jenkins' show-up was recorded on Tape # 249678. However, detectives played the tape prior to leaving Jenkins' home and realized the tape had recorded poorly. Detectives then used a microcassette Tape # 217290 to re-record the identification made by Jenkins.

-4-
**PLAINTIFF'S MOTION IN LIMINE NO. 5**

Detectives will have SID attempt to enhance the sound quality of Tape # 249678."

The original tape was never transcribed and no audible copy was ever produced by anyone. In fact, the nature of ID at the second interview is so suspicious, that in the oral arguments of both appeals, the 9th Circuit panel each time brought out that one of the issues in this case was the interview technique utilized in that interview with Mr. Jenkins.

A review of the Jenkins deposition testimony demonstrates that counsel was the one who brought up that they briefly met with him prior some time before the deposition and he thereafter testified over and over in response to defense counsel's angry questioning toward him that counsel had nothing to do with what he stated. There is no evidence to the contrary.

Of course, defense counsel would like this Court to ignore Jenkins clear and unequivocal testimony regarding the substantial pressure the defendants placed on him way back when he was 17 years old after having been shot, even after having been hounded by defense counsel's aggressive questioning which was evident in person and will likely be evident on the video. Defense counsel would like this Court to ignore that Jenkins testified that he was happy to finally be able to clear his conscience 20 years later after the police officers had told him way back then that this Mexican gang had been killing young black kids in the area right before they pointed their finger specifically at Milla's photo over and over again saying look at the scar before Jenkins agreed that was

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

him. And defense counsel would like this Court to ignore that the officers somehow "lost" the tape of the interview and in the re-tape after the questioning was wholly leading.

Contrary to what defense counsel states without a shred of evidence submitted therewith, Ramar Jenkins' deposition was taken after (a) obtaining available dates from defense counsel (see attached as Exhibit 1 a true and correct copy of emails documenting the available dates for defense), (b) moving ex parte to the Magistrate to issue an order, which order was issued with no objection whatsoever being filed by defense (See, Docket Document entry 230.

Plaintiff met and conferred after the deposition with defense counsel, who indicated at the end of the deposition transcript (perhaps because the testimony did not go his client's way) that he was going to object to the playing and/or reading of the deposition transcript. This was the first time he had actually objected to the proceedings going forward. Mr. Plowden, defense counsel at the time, was fully able to participate in the deposition and asked all the questions he wanted to ask.

The bottom line is there is no good reason or evidentiary basis or any reason whatsoever for defense counsel to attempt to allege any wrongdoing on the part of plaintiffs' attorneys, except to try to wrongfully and in bad faith influence this Court and/or a jury.

Further, police officers from LAPD had previously visited Mr. Jenkins, according to his deposition testimony. Does that mean they improperly attempted to influence his testimony?

## II.   ANY ATTEMPT TO FALSELY IMPLY ANY WRONGDOING ON COUNSEL'S PART IS IRRELEVANT, SPECULATIVE AND HIGHLY PREJUDICIAL

FRE 402 and 403 provide that this Court may exclude irrelevant matters as well as matters whose "probative value is substantially outweighed" by the danger of undue prejudice, confusing the issues, misleading the jury, or an undue consumption of time. [FRE 403].

The evidence in this case demonstrates strongly that there is no wrongdoing on counsel's part and that defendants have absolutely no evidence of any wrongdoing on counsel's part.

As such, this motion in limine should be granted.

DATED:  April 13, 2023

Respectfully submitted,
LAW OFFICES OF MARTIN STANLEY

By:_____/s/ Martin Stanley_____
MARTIN STANLEY, ESQ.
Attorneys for Plaintiff MARCO MILLA

# DECLARATION OF MARTIN STANLEY

I, MARTIN STANLEY, declare:

1.  I am an attorney duly licensed to practice law in this Court, attorney of record for Plaintiff MARCO MILLA. The facts herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.  Both plaintiff's counsel and plaintiff are objecting to the defense counsel's attempt to insinuate or claim that plaintiffs' counsel somehow, by simply visiting Ramar Jenkins in prison to interview him and see if would agree to be deposed, affected his testimony. Because of this extremely inappropriate accusation, I feel compelled to set forth my dozens of years of service to the State Bar and other community service organizations. As set forth in the emails between counsel attached as an exhibit to our application, among other things, I was previously a probation monitor for the State Bar, appointed to the State of California Diversion Committee of the State's Dental Board, previously called on by the California Committee on Judicial Performance to aid in an intervention on a sitting judge, have voluntarily taught dozens if not hundreds of Mandatory Continuing Legal Education seminars in the area of ethics, substance abuse in the legal profession and malpractice and have been nominated by my peers 3 times in the past 15 years by the Consumer Attorneys Association of Los Angeles for trial lawyer of the year.

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

Mr. Barrett has been a long time criminal law practitioner with an impeccable reputation.

3.   Mr. Barrett and I went to the trouble of locating and arranging to interview Jenkins at a remote prison in the desert in order to investigate what happened during the time that the investigating police detectives interviewed him concerning his positive identification of plaintiff in a photo six-pack on October 22, 2001. The reason we wanted to interview Mr. Jenkins was twofold:

4.   First, Ramar Jenkins had been interviewed previously, on October 11, 2001 and, even though he was shown a photo array which included a picture of Mr. Milla, he was unable to identify Mr. Milla.

5.   Second, we were curious about why there were two recordings of the October 22, 2001 interview. That is, the police first interviewed Mr. Jenkins and recorded it, but then interviewed and recorded Mr. Jenkins a second time. The interviewing detectives said in their report that the first recording didn't record properly and it was impossible to understand what was said on the recording. Therefore, the interviewing detectives recorded a second interview in which the "positive identification" was made in response to leading questions.

6.   Therefore, Mr. Barrett and I were curious to learn whether Mr. Jenkins could explain these discrepancies. When we heard Mr. Jenkins' answers, we asked if he would agree to be deposed in this case.

-9-
**PLAINTIFF'S MOTION IN LIMINE NO. 5**

7.   The defense counsel is implying that we somehow inappropriately influenced his testimony, without any factual basis whatsoever. Moreover, he is implying that we successfully got Jenkins to lie in only about 20 minutes; the time being verifiable by checking the records of the Litigation Office at Calipatria. And we did this without any promises, inducements or enticements. He is implying we were also able to do this despite the fact that Jenkins was himself shot by the shooter, not to mention that one of his best friends was killed by the shooter.

8.   As stated above, the truth is that we went to interview Jenkins because of the suspicious nature of his original identification of Milla. Remember, the first time Jenkins was shown a photo array with Milla's picture, Jenkins did not ID Milla. The second time he was shown a photo array (documented at pg. 8 of the 9-page report attached above, the cops wrote:

"Jenkins' show-up was recorded on Tape # 249678. However, detectives played the tape prior to leaving Jenkins' home and realized the tape had recorded poorly. Detectives then used a microcassette Tape # 217290 to re-record the identification made by Jenkins.

Detectives will have SID attempt to enhance the sound quality of Tape # 249678."

9.   The original tape was never transcribed and no audible copy was ever produced by anyone. In fact, the nature of ID at the second interview is so suspicious, that in the

-10-
**PLAINTIFF'S MOTION IN LIMINE NO. 5**

oral arguments of both appeals, the 9th Circuit panel each time brought out that one of the issues in this case was the interview technique utilized in that interview with Mr. Jenkins.

10. A review of the draft of Jenkins deposition testimony demonstrates that I was the one who brought up that we briefly met with him prior some time before the deposition and he thereafter testified over and over in response to defense counsel's angry questioning toward him that we had nothing to do with what he stated. There is no evidence to the contrary.

11. Of course, defense counsel would like this Court to ignore Jenkins clear and unequivocal testimony regarding the substantial pressure defendants placed on him way back when he was 17 years old after having been shot, even after having been hounded by defense counsel's aggressive questioning which was evident in person and will likely be evident on the video. Defense counsel would like this Court to ignore that Jenkins testified that he was happy to finally be able to clear his conscience 20 years later after the police officers had told him way back then that this Mexican gang had been killing young black kids in the area right before they pointed their finger specifically at Milla's photo over and over again saying look at the scar before Jenkins agreed that was him. And defense counsel would like this Court to ignore that the officers somehow "lost" the tape of the interview and in the re-tape after the questioning was wholly leading.

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

12. Contrary to what defense counsel states without a shred of evidence submitted therewith, Ramar Jenkins' deposition was taken after (a) obtaining available dates from defense counsel (see attached as Exhibit 1 a true and correct copy of emails documenting the available dates for defense), (b) moving ex parte to the Magistrate to issue an order, which order was issued with no objection whatsoever being filed by defense (See, Docket Document entry 230.

13. Plaintiff met and conferred after the deposition with defense counsel, who indicated at the end of the deposition transcript (perhaps because the testimony did not go his client's way) that he was going to object to the playing and/or reading of the deposition transcript. This was the first time he had actually objected to the proceedings going forward.

14. Mr. Plowden, defense counsel, was fully able to participate in the deposition and asked all the questions he wanted to ask, as demonstrated in the rough draft submitted to this Court (the court reporter did err in the rough draft that it was Mr. Barrett my co-counsel asking the questions when it was in fact me and she is making that correction).

15. The bottom line is there is no good reason or evidentiary basis or any reason whatsoever for defense counsel to attempt to allege any wrongdoing on the part of plaintiffs' attorneys, except to try to wrongfully and in bad faith influence this Court and/or a jury.

16. Further, police officers from LAPD had previously visited Mr. Jenkins, according to his deposition testimony. Does that mean they improperly attempted to influence his testimony?

17. Finally, counsel have thoroughly met and conferred on this issue. Besides discussing this issue with defense counsel, among other things, on April 11, 2023, 2 days prior to filing, plaintiff's counsel emailed this motion in limine to defense counsel asking that he review it and respond as to whether he would agree to it or not.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 13, 2023, at Santa Monica, California.

By:_____/s/ MARTIN STANLEY___

**PLAINTIFF'S MOTION IN LIMINE NO. 5**

# EXHIBIT 1

## M Gmail

Martin Stanley <mstanleyesq@gmail.com>

---

## Milla Final Pretrial Conference 2:16-cv-00134

---

**Martin Stanley** <mstanleyesq@gmail.com>                                          Wed, Mar 30, 2022 at 10:24 AM
To: Geoff Plowden <geoffrey.plowden@lacity.org>
Cc: Paul Cruz <paul_cruz@cacd.uscourts.gov>

Hi. Hope all is well. We are trying to proceed with the depo of ramar jenkins on April 6 at 1 PM which is an agreed
date for both parties. He is in state prison. The prison has set it all up for us on short notice and we are hoping the
court would grant an order to take the depo quickly since he is a prisoner under rule 30 of frcp. The case had been
assigned to magistrate judge wistrich for discovery issues but since he is no longer there who do we submit the
application to and do you believe we can get it signed quickly or should we change the depo date? Thanks so much.
Martin stanley
Attorney for plaintiff

Sent from my iPhone


> On Mar 15, 2022, at 7:36 PM, Geoff Plowden <geoffrey.plowden@lacity.org> wrote:

# Milla depo Jenkins        Inbox ×



**Martin Stanley** <mstanleyesq@gmail.com>                    Thu, Mar 31, 2022, 10:43 AM
to Geoff

Just wondering if u have any objection to moving it to noon if prison can do that? Thx

Sent from my iPhone



**Martin Stanley** <mstanleyesq@gmail.com>                    Thu, Mar 31, 2022, 9:53 PM
to Geoff

just checking again to see if you have any objection to moving depo to noon if the prison is ok with that? appre
reply one way or the other. thx.



**Geoff Plowden** <geoffrey.plowden@lacity.org>               Fri, Apr 1, 2022, 9:15 AM

# Milla

Inbox ×



**Martin Stanley** <mstanleyesq@gmail.com>                    Mon, Mar 28, 2022, 5:52 PM
to Geoff

We are on for April 6 at 1 PM and And I notice under federal rules we need an order to depose a prisoner whic
court should basically automatically grant. Are you willing to stip so I can send to the magistrate ?  Thx for reply

Sent from my iPhone

**Geoff Plowden**                                        Mon, Mar 28, 2022, 5:54 P
I need to see a notice of depo. Then I will review the stip. -- Geoffrey Plowden Deputy City Attorney Police Litig

**Martin Stanley** <mstanleyesq@gmail.com>                    Mon, Mar 28, 2022, 6:14 PM
to Geoff

here is the draft of the stip and a draft of the notice. let me know whether you agree or need any changes or
modifications. thanks. martin

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 100 Wilshire Blvd, Suite 700, Santa Monica, California 90401.

On **April 13, 2023,** I served the foregoing document(s) on the interested parties in this action by email as follows:

**Attorney for Defendants:**
KEVIN GILBERT
Email: kgilbert@ohhlegal.com

BY ELECTRONIC DELIVERY DUE TO COVID-19

[**X**]  STATE:  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **April 13, 2023,** at Santa Monica, California

_____/s/ MARTIN STANLEY\_\_\_
Martin Stanley