HYDEE FELDSTEIN SOTO, City Attorney - SBN 106866
SCOTT MARCUS, Chief Assistant City Attorney - SBN 184980
CORY M. BRENTE, Senior Assistant City Attorney - SBN 115453
cory.brente@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Telephone: (213) 978-7021/Facsimile: (213) 978-8785

Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Carolyn M. Aguilar, Esq. (SBN: 289550)
caguilar@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone: (510) 999-7908/Facsimile: (510) 999-7918

Attorneys for Defendants
CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT,
DETECTIVE R. ULLEY and DETECTIVE J. VANDER HORCK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MILLA an individual,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal entity; COUNTY OF LOS ANGELES, DETECTIVE R. ULLEY AND DETECTIVE J. VANDER HORCK, and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.  16-cv-00134-FWS-MRW<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 3 SEEKING AN ORDER REQUIRING PLAINTIFF TO DEFINE THE BASIS OF HIS *MONELL* CLAIM(S)**<br><br>[Filed concurrently with Declaration of Kevin E. Gilbert; Proposed Order]<br><br>PTC:　　May 5, 2023<br>TIME:　9:00 a.m.<br>DEPT:　Courtroom 10D<br>JUDGE:　Hon. Fred W. Slaughter<br>TRIAL:　May 16, 2023 |

TO THIS HONORABLE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 5, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendants will move the court in limine, before trial and the selection of the jury, for an order as follows:

1. That the court hold a hearing outside the presence of the jury, prior to trial, requiring Plaintiff to articulate the factual and legal bases for the *Monell* claim or claims he intends on pursuing. Defendants seek identification of the specific policy, custom, pattern or practice or lack of training at issue, and the identification of the alleged final policymaker.

2. Defendants seek an order requiring Plaintiff to identify the witnesses to such other events, incidents or persons he intends to call in support of his *Monell* claim or claims.

3. If Plaintiff is pursuing a failure to train theory, that the specific training deficiency needs be identified and the incidents which support a contention that there is a systemic failure to train. Defendants also seek the identification of witnesses he intends to call on this topic.

4. Defendants also seek an order precluding Plaintiff, his witnesses or experts from claiming that the Detectives in this case should have used a "double blind" method when showing the photo lineups to witnesses and that LAPD's policy which does not require the use of a "double blind" method is a violation of *Monell,* as there is no support for this contention. See, Federal Rules of Evidence, Rule 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008); *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002).

5. Additionally, to the extent that Plaintiff is intending to assert a ratification theory, Plaintiff again must identify who he alleges to be the final policymaker ratifying the alleged unlawful conduct in this case, and any other witnesses or evidence that are intended to be called or submitted in support of this theory.

Defendants have a right to know what claims are being pursued so that witnesses can be identified, documents gathered and presented and jury instructions drafted. To the extent Plaintiff will have to prove the existence of a custom, pattern or practice, he will need to identify witnesses and incidents from which he contends prove the long standing custom, pattern or practice. Fed. R. Evid. 103, 104, 105; Fed. R. Civ. P. 16(c)(2)(A)(C)(N)(O)(P).

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Kevin E. Gilbert and any further evidence that may be presented at the hearing on the motion. Pursuant to this Court's Civil Order regarding Pretrial and Trial Procedures, counsel for both parties have been in continuous discussions regarding trial filings in this matter, including the subject of this motion in limine. However, notwithstanding those meet and confer efforts, the parties were unable to agree on this issue and this motion is necessary.

Dated: April 13, 2023

Respectfully submitted,
**ORBACH HUFF + HENDERSON LLP**

By: ___*/s/ Kevin E. Gilbert*___
     Kevin E. Gilbert
     Carolyn M. Aguilar
     Attorneys for Defendants
     CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, DETECTIVE R. ULLEY and DETECTIVE J. VANDER HORCK

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, DETECTIVE R. ULLEY and DETECTIVE J. VANDER HORCK ("Defendants"), respectfully ask this Court to order Plaintiff to provide further information in support of his *Monell*-based claims. At present, Defendants have no indication of witnesses or evidence that Plaintiff intends to use in support of his *Monell* claims, much less *which* theory of *Monell* Plaintiff intends to pursue in this case. Accordingly, Plaintiff must present an offer of proof that his *Monell* claims are at all plausible.

## II. STATEMENT OF FACTS

In 2002, Plaintiff Marco Milla ("Plaintiff") was convicted of the murder of Robert Hightower ("Hightower") and the attempted murder of several others for a shooting that occurred on September 29, 2001 in Los Angeles. Subsequent to his conviction and incarceration, a witness, Salvador Pimentel, came forward in or around 2010 claiming he had proof that Plaintiff did not commit the shootings. Pimentel further asserted that Julio Munoz (aka "Downer") was the actual shooter. Using Pimentel's testimony, together with a new witness's testimony (Maria F.), Plaintiff filed a writ of habeas corpus which was ultimately granted, leading to Plaintiff's conviction being overturned. Plaintiff then filed this action one year later, alleging Defendants unlawfully imprisoned and maliciously prosecuted Plaintiff.

In September of 2001, Defendants Richard Ulley and John Vander Horck ("Detectives") were assigned to investigate the Hightower murder. Plaintiff alleges that the Detectives used coercive interviewing and line-up tactics to identify him as the shooter and failed to investigate his alibi. In reality, the Detectives did nothing wrong and reasonably believed that Plaintiff was the involved shooter, not only because he was positively identified by multiple witnesses, but because he fit the description of the shooter, appeared to have motive (gang membership and the racially motivated crime),

ORBACH HUFF + HENDERSON LLP

had access to weapons (prior arrests and gun cases and ammunition found at his house), was associated with the gang in that area, and was not in custody at the time of the crime. Ultimately, the Detectives were unaware of the new evidence that came to light only after Plaintiff was convicted and incarcerated.

As previously represented, Defendants attempted through discovery meet confer to determine the exact parameters of the *Monell* allegations in this matter. See, Exhibit A to the Declaration of Kevin Gilbert ("Gilbert Dec."), which includes the prior Declaration of Mr. McAleer, exhibit 100, Plaintiff's responses to Special Interrogatories propounded by Defendant Richard H. Ulley dated September 14, 2016, questions 9 through 17.

Plaintiff has never identified *Monell* witnesses to support his allegations or identified other incidents to establish the existence of a custom, policy, pattern or practice. The cases that Plaintiff initially proffered on this issue were settled without a finding of liability. As a result they could not have been notice to the City regarding any alleged misconduct. Moreover, Plaintiff's cited cases occurred well after 2001 and as a result also could not serve a basis for notice of the City's allegedly unconstitutional policies or practices.

Even Plaintiff's police practices expert Steve Strong did not firmly state the basis for a *Monell* violation. His rule 26 expert designation speaks in hypotheticals, of "If the City failed to train (¶ 28)", "if it failed to establish clear policies (¶ 29)", "if it failed to take corrective action (¶ 30)" (See exhibit 80 to reply to MSJ, pg. 8 of 8 of the report to MSJ.) This is not a definite statement indicating liability and appears to be pure speculation.

To the extent Plaintiff is claiming there is a pattern within LAPD of failing to discipline or otherwise condoning misconduct, there is no evidence of this. It is well-known that LAPD has a disciplinary process and that nearly every complaint of officer misconduct submitted to LAPD is investigated.

During discovery, Plaintiff, through his expert, Steve Strong, argued that the LAPD should use a double blind method when showing photo line-ups. However,

Plaintiff never provided any documents establishing that using the double blind methodology was policy or standard practice in other police departments at the time of the investigation in this case. When an expert such as Mr. Strong, "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1201 (11th Cir. 2010), quoting Fed. R. Evid.702, Advisory Committee Note, 2000 Amendment. Thus, in applying Rule 702, the trial court exercises its discretion regarding the admissibility of expert-technical evidence by performing a "'gatekeeping role…to all expert testimony….'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); see *Daubert*, 509 U.S. at 590-592. In this regard, it is the trial judge's role as gatekeeper to screen such testimony for relevance and reliability: that is, to make an assessment as to whether the reasoning and methodology underlying the expert testimony is scientifically valid and can be properly applied to the facts at issue. Daubert, 509 U.S. at 591-593. "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). If not, the expert opinion is inadmissible. *Id*.

Furthermore, any conclusion by Mr. Strong that the City's practices "violated *Monell*" is an ultimate conclusion. Expert witnesses are prohibited from drawing legal conclusions because to do so would interfere with the province of the trier of fact or the court. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051, 1060 (9th Cir. 2008) ("[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." (internal quotations omitted)); *Mukhtar v. Cal. State Univ*., 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("[A]n expert witness cannot

///

give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." (emphasis in original)).

## III. THE COURT SHOULD HOLD A HEARING TO DETERMINE WHAT EVIDENCE WILL BE ALLOWED ON THE *MONELL* ISSUES

Defendants are asking the court to use its inherent powers to control the proceedings and make a preliminary determination of fact or even have an offer of proof so that Defendants are aware of what theories they have to defend against, entitle the Defendants to identify witnesses and to craft jury instructions. The court may require such showings under FRE 104. Although Plaintiff's expert argues that the Detectives' actions during the investigation were unreasonable and contrary to policy, Mr. Strong does not identify the specific deficiencies or policies that were allegedly violated. Thus, there appears to be no evidence in support of Plaintiff's claims.

## IV. PLAINTIFF MUST IDENTIFY THE POLICIES, PRACTICES, OR POLICYMAKER TO SUPPORT HIS MONELL CLAIM(S)

In order to prevail on a *Monell* theory, Plaintiff must show more than one instance, so that he can establish a custom, pattern or practice. If Plaintiff's theory is in fact one of failure to train, the case of *Oklahoma City v. Tuttle*, 471 US 808, 824 (1985) makes this point clear. If plaintiffs are not going to introduce other incidents, then they are left with the single allegation, what occurred in this case. One incident does not a pattern make.

Ninth Circuit Manual of Model Jury Instructions 9.4 lists as an element of the *Monell* claim the following: "Practice or custom" means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of the defendant [name of local governing body]. The use notes to this instruction state: "In addition, §1983 liability of a local governing body may attach when an employee committed a constitutional violation pursuant to a "longstanding practice or custom." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir.2003), cert. denied, 540 U.S. 1141 (2004). **The plaintiff must prove the existence of such a longstanding practice or policy as a matter of fact.** *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir.1996) ("Normally, the

question of whether a policy or custom exists would be a jury question."). A "custom or practice" must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id.* at 918 (quoting *Monell*, 436 U.S. at 691)." (Emphasis added.) Plaintiff, however, has never identified what policy, practice or custom was the alleged "moving force" behind Defendants' actions allegedly causing Plaintiff's injuries.

Similarly, Plaintiff has never identified what or where Defendants allegedly failed to train the Detectives or what procedures were allegedly inadequate. To succeed on a failure to train theory, Plaintiff must also demonstrate a "conscious" or "deliberate" disregard of individual rights by the City. See, *Blackenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). Plaintiff must show that (1) he was deprived of a constitutional right; (2) the municipality had a training policy or training program that amounts to deliberate indifference to his constitutional rights; and (3) the constitutional injury would have been avoided had the municipality properly trained its officers. See *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 769 (9th Cir. 1989). The Ninth Circuit has stated that to prove deliberate indifference, both in failure to train and failure to supervise, a plaintiff must show reckless or wanton behavior, a standard far beyond mere negligence. See *Redman v. County of San Diego*, 942 F.2d 1435, 1453 (9th Cir. 1991); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). As above, Plaintiff has never identified what tactics were allegedly unlawful or what standards the City allegedly failed to meet. Mere conclusory statements of an alleged violation are simply insufficient.

To prove ratification, the plaintiff must present "evidence of a conscious, affirmative choice" by an authorized policy maker. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). In addition, "a plaintiff must show that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citations omitted). "The policymaker must have knowledge of the constitutional violation and actually approve it." *Lytle*, 382 F.3d at 987. Plaintiff has never identified any policymaker, nor has he even alleged that a policymaker so much as *knew* about any alleged misconduct by the Detectives herein and

then explicitly ratified such unlawful conduct. Plaintiff must present identifications and witnesses to support this theory if he intends to pursue it at trial.

Therefore, Defendants request for the court hold a hearing, outside the presence of the jury, or ask for an offer of proof, as to how Plaintiff intends to prove the existence of a violation of *Monell* on any of the above theories.

## V. CONCLUSION

Based upon the foregoing, at this late date Plaintiff refuses to identify the basis of his *Monell* claim and other incidents or witnesses. The pre-trial and trial preparations cannot be completed until such commitments and a determination of the preliminary validity of the allegations are made.

Plaintiff doesn't provide witnesses or an expert opinion that the "double blind" method is required under the law or a generally accepted police practice. Therefore, Plaintiff must be prohibited from claiming the failure to require the use of a double blind method is deliberately indifferent or a *Monell* violation.

Dated:  April 13, 2023          Respectfully submitted,
                                **ORBACH HUFF + HENDERSON LLP**

                                By:    */s/ Kevin E. Gilbert*
                                      Kevin E. Gilbert
                                      Carolyn M. Aguilar
                                      Attorneys for Defendants
                                      CITY OF LOS ANGELES, LOS ANGELES
                                      POLICE DEPARTMENT, DETECTIVE R.
                                      ULLEY and DETECTIVE J. VANDER HORCK