HYDEE FELDSTEIN SOTO, City Attorney - SBN 106866
SCOTT MARCUS, Chief Assistant City Attorney - SBN 184980
CORY M. BRENTE, Senior Assistant City Attorney - SBN 115453
cory.brente@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Telephone: (213) 978-7021/Facsimile: (213) 978-8785

Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Carolyn M. Aguilar, Esq. (SBN: 289550)
caguilar@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone: (510) 999-7908/Facsimile: (510) 999-7918

Attorneys for Defendants
CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, DETECTIVE RICHARD ULLEY and DETECTIVE JOHN VANDER HORCK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MILLA an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal entity; DETECTIVE R. ULLEY AND DETECTIVE J. VANDER HORCK, and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | Case No.  16-cv-00134-FWS-MRW<br><br>**DEFENDANTS' BRIEF REGARDING PROPOSED TESTIMONY FROM OLIVIA ROSALES AND DEFENDANTS' REQUEST TO USE COPIES OF TRANSCRIPTS**<br><br>TRIAL:　July 5, 2023<br>JUDGE:　Hon. Fred W. Slaughter |

At the June 16, 2023, Further Pretrial Conference, the Court instructed Defendants to provide a brief on the scope of Ms. Olivia Rosales' anticipated trial testimony, with citation to law, as well as why copies of the prior transcripts are admissible.

## I.  SCOPE OF TESTIMONY OF WITNESS OLIVIA ROSALES

Defendants believe it will be necessary to call Ms. Olivia Rosales as a witness based upon her actions as the prosecuting Deputy District Attorney during the criminal trial of Plaintiff Marco Milla.  Ms. Rosales was the prosecuting DA and is anticipated to testify to certain information and facts, primarily to refute Plaintiff's claims that the Detective Defendants withheld and/or fabricated information.  Such testimony and evidence is relevant in response to Plaintiff's attempts to argue that probable cause didn't exist, as well as in response to Plaintiff's efforts to defeat the presumption of probable cause following certain actions, including the DA's decision to prosecute and the Court's decision to hold Plaintiff to answer after the preliminary hearing.  Pursuant thereto, Defendants anticipate questioning Ms. Rosales on the following general categories:

- What was the process in 2001-2002 for a murder investigation to be reviewed and accepted by the District Attorney's Office?

- Did the District Attorney's Office undertake any independent investigation (both typically and specifically on the prosecution of Milla) to determine if probable cause existed for his prosecution?

- Does the prosecuting DA have discretion to cease criminally prosecuting a case if they believe probable cause is lacking?

- Was the DA's office (and Ms. Rosales as the prosecuting DA) aware of a problem in the audio recording of an interview of victim Jenkins which resulted in the Detectives re-recording Jenkins' identification of Milla as the shooter?  Did the missing recording have any impact on the DA's prosecution?

- Did victim Jenkins ever do anything (including testifying or making any out-of-court statements) that Ms. Rosales was aware of which suggested his identification of Milla was coerced?

- Was evidence of Milla's claimed alibi and the Detectives' related investigation known to Ms. Rosales, as the prosecuting DA?

Obviously, the foregoing descriptions are merely generalized topics so as to allow the Court to better understand the anticipated scope of examination of Ms. Rosales. Relevant thereto, the key legal principles to which Ms. Rosales' testimony relates are as follows:

In order to prevail on a 42 U.S.C. § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

### A. The Effect of a Finding of Probable Cause at Different Stages of the Arrest and Prosecution

There are three steps at which there could be a finding of probable cause; such a finding may serve to either immunize Defendants from liability and/or damages, break the causal link, and/or estop a later claim of lack of probable cause: arrest, prosecution, and the preliminary hearing. Ms. Rosales' testimony is relevant to all three.

#### 1. Arrest

As stated in *Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011), in a garden-variety false arrest claim challenging the probable cause for an arrest, if the arrest warrant is facially valid, the arresting officer enjoys immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable...." *Smith*, 640 F.3d at 937, citing to *Malley v. Briggs,* 475 U.S. 335, 344–45 (1986), 106 S. Ct. 1092; *see also KRL v. Estate of Moore,* 512 F.3d 1184, 1190 (9th

Cir. 2008) ("[A]n officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant.").

To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *KRL*, 512 F.3d at 1117. Here, Ms. Rosales was provided with the investigatory materials and facts which the Detective Defendants contend supported a finding of probable cause and ultimately led to the issuance of an arrest warrant. Her testimony will directly address whether there was any contrary evidence at any time that suggested the initial determination of probable cause was based upon "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Id*.

### 2. Decision to Prosecute

Next, the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (overruled by *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) as to First Amendment-based retaliatory arrest or prosecution cause of action). Therefore, this breaks the chain of causation between an arrest and a prosecution. *Smiddy*, 665 F.2d at 266-68.

Although this presumption may be rebutted, "[t]he plaintiff bears the burden of producing evidence to rebut such presumption." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). Where a plaintiff seeks to rebut the presumption by arguing that the prosecutor relied on the police investigation instead of making an independent judgment on the existence of probable cause, the plaintiff must present information *in addition to his own account* that contradicts the police report to avail himself of this showing. *See Newman,* 457 F.3d at 994-95. Thus, the information and facts relied upon

by Ms. Rosales, as the prosecutor, is directly relevant, especially given Plaintiff's obligation to introduce evidence that contradicts the police report.

### 3. Preliminary Hearing

Plaintiff will also need to refute the presumption of probable cause related to the criminal court holding Plaintiff to answer after the preliminary hearing. "The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and expense of a criminal trial." *Jaffe v. Stone*, 18 Cal.2d 146, 149 (1941). It is a long-standing principle of common law in California that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie—but not conclusive—evidence of probable cause. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Where "a trier of fact after a fair adversary hearing reach[ed] a determination on the merits against the defendant in the prior proceeding" there is a "conclusive presumption of probable cause" and "the defendant in that proceeding may not thereafter institute an action for malicious prosecution, whether the matter was criminal or civil, even though he shows that the determination in question was reversed on appeal or set aside by the trial judge." *Cowles v. Carter*, 115 Cal.App.3d 350, 358 (1981).

Among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *Awabdy*, 368 F.3d at 1067. Thus, whether any such evidence was admitted during the preliminary hearing (or otherwise known by the DA) is probative and relevant.

### 4. A Plaintiff May Be Collaterally Estopped from Re-Litigating the Issue of Probable Cause Where it Was Adjudicated at the Preliminary Hearing

Even assuming Plaintiff could overcome a finding that probable cause existed, he may still be estopped due to findings in the earlier criminal case. The doctrine of collateral estoppel "has the dual purpose of protecting litigants from the burden of

relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The Supreme Court has held collateral estoppel may apply when section 1983 plaintiffs attempt to relitigate, in federal court, issues decided against them in state criminal proceedings. *Allen v. McCurry*, 449 U.S. 90, 103 (1980); see also *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994).

"When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim." *Awabdy*, 368 F.3d at 1068; see also *Evans v. Cnty. of L.A.*, 529 F.Supp.3d 1082, 1093 (2021) (a Defendant in a malicious prosecution or false arrest case may claim collateral estoppel where the issue of whether probable cause existed to charge and hold the Plaintiffs over for trial was litigated at Plaintiffs' preliminary hearing). "As a general rule, each of [the] requirements [for collateral estoppel] will be met when courts are asked to give preclusive effect to preliminary hearing probable cause findings in subsequent civil actions for false arrest and malicious prosecution." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013).

The *Evans* decision is instructive, wherein the plaintiff was acquitted of murder at trial after being incarcerated for four years and subsequently brought a case for false imprisonment, violation of the Bane Act, and violations of §§ 1983 and 1985. *Evans*, 529 F.Supp.3d at 1086-87. The defendants moved for summary judgment, contending that the § 1983 malicious prosecution claim was barred because the issue of probable cause had already been decided at the preliminary hearings. In granting the motions for summary judgment on the § 1983 claim, the Court went through the elements of collateral estoppel as applied to the facts of that case, finding in relevant part as follows: "First, the court must presently determine whether the evidence supports a finding of probable cause for Plaintiffs' arrests and prosecution. This is identical to the issue resolved at the two preliminary hearings, when Plaintiffs were held to answer for

Jackson's murder. *Wige*, 713 F.3d at 1185. Thus, the first element is satisfied." *Id.*, at 1094. In *Evans*, the Court found the issue of whether probable cause was actually litigated in the prior proceeding was satisfied where plaintiff argued at the preliminary hearing that witnesses had lied, and this argument was considered by the judge. *Evans*, 529 F.Supp.3d at 1094. That decision is consistent with *Haupt v. Dillard,* 17 F.3d 285 (1994), wherein the plaintiff argued that because he was acquitted in the underlying criminal trial and because the probable cause determination at his preliminary hearing was not necessary to support that judgment, the issue was not "necessarily decided" as required by state tort (malicious prosecution) law. The Ninth Circuit found that "in fact, the probable cause determination *was* necessary to the judgment; the sole purpose of the preliminary hearing was to determine whether [plaintiff] should have been bound over for trial. But for the probable cause determination, there would have been no trial and no judgment of acquittal." *Haupt*, 17 F.3d 285, 289 (9th Cir. 1994).

Moreover, "the purpose of a preliminary hearing under California law is to determine whether probable cause exists to support the criminal charges that have been filed and to hold the defendants over for trial. See *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994), as amended (Apr. 15, 1994)." Thus, the question of probable cause was decided at the time of the preliminary hearings. *Evans*, 529 F.Supp.3d at 1094-95. Furthermore, "a 'finding of probable cause to hold the defendant over for trial is a final judgment on the merits for the purposes of collateral estoppel under the California law....'" *Evans*, 529 F.Supp.3d at 1095, citing to *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 1145-46 (1999).

Finally, the Court in *Evans* found privity "because Defendants seek to assert collateral estoppel against Plaintiffs, who were the parties who were held to answer upon [the judge's] finding of probable cause."

Relevant to Ms. Rosales' testimony, "collateral estoppel does not apply when the decision to hold a defendant to answer [at trial] was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct

- 6 -

by state or local officials" (*Awabdy*, 368 F.3d at 1068; see also *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 1147 (1999) ["When the officer misrepresents the nature of the evidence supporting probable cause and that issue is not raised at the preliminary hearing, a finding of probable cause at the preliminary hearing would not preclude relitigation of the issue of integrity of the evidence."]), collateral estoppel may still preclude relitigation of the probable cause determination in a subsequent civil proceeding if the plaintiff "challenges [the allegedly tainted evidence] at the preliminary hearing as being false, and the [judge] decides the credibility issue in the arresting officer's favor." *Greene v. Bank of America*, 236 Cal.App.4th 922, 933 (2015). Thus, Ms. Rosales' testimony regarding the preliminary hearing and the evidence and testimony presented at that proceeding is directly relevant.

## II. ADMISSIBILITY OF COPIES OF TRANSCRIPTS

Defendants respectfully request the Court authorize the use of copies of transcripts from the proceedings before the Los Angeles Superior Court in the underlying criminal prosecution of Plaintiff Milla (including the transcripts from the preliminary hearing and the criminal trial), in lieu of certified originals. The transcripts from the criminal proceedings (including the preliminary hearing and the criminal trial) were prepared in 2002 and 2003, and were filed in both the Los Angeles Superior Court and the California Court of Appeal related to the earlier criminal proceedings. Federal Rules of Evidence 1003 expressly authorizes the admissibility of a duplicate record or document, to the same extent that the original is admissible. *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 111 (5th Cir. 1994) (trial court abused its discretion in refusing to admit duplicates in the form of facsimiles; "Fed. R. Evid. 1003 provides that duplicates, which we understand to include facsimiles, are as admissible as the originals, assuming there are no authenticity concerns."); *U.S. v. Woodard*, 39 M.J. 1022, 1026 (A.C.M.R. 1994).

Defendants' request is based upon the unavailability of the original transcripts. The original transcripts were prepared over twenty years ago, with copies filed with the Los Angeles Superior Court and the California Court of Appeal as part of Plaintiff's

appeal/habeas proceedings. More recently, Defendants attempted to obtain the original transcripts directly from the Los Angeles Superior Court and/or the court reporters that actually prepared those transcripts, without success. The Los Angeles Superior Court's Records, Exhibits, and Archives Unit confirmed that the original transcripts were filed with the Court[1] on or about February 27, 2002, and March 11, 2002 (for the preliminary hearing), and October 8, 2003 (for the criminal trial), but that the transcripts are no longer available. Thereafter, Defendants attempted to contact the court reporters who transcribed those hearings, but none are currently registered as active licensed court reporters. Although Defendants believe that one of the reporters may currently be living in Pittsburgh, PA, Defendants were unable to reach her.

The transcripts from the prior criminal proceedings that Defendants seek to utilize (including the preliminary hearing and criminal trial) all contain reporter's Certificates, confirming that the transcripts are true and correct statements of the testimony and proceedings. Copies of the face pages for each of the transcripts, as well as the reporter's Certificates, are attached hereto as **Exhibit 1** for the Court's reference.

Defendants respectfully request the Court allow the copies of the transcripts from the preliminary hearing and criminal trial – all of which include the reporter's Certificates – be used in lieu of the original transcripts.

Dated: June 21, 2023        Respectfully submitted,
**ORBACH HUFF + HENDERSON LLP**

By:  */s/ Kevin E. Gilbert*
        Kevin E. Gilbert
        Attorney for Defendants
        CITY OF LOS ANGELES, LOS ANGELES
        POLICE DEPARTMENT, DETECTIVE R.
        ULLEY and DETECTIVE J. VANDER HORCK

---

[1] The transcripts from the preliminary hearing were filed with the Los Angeles Superior Court, while the transcripts from the criminal trial were filed with the Court of Appeal, Second District.